No. 25-50518

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

Julio Del Rio, individually and on behalf of all others similarly situated; Jack Murphy, individually and on behalf of all others similarly situated; Steven Bixby, individually and on behalf of all others similarly situated; Christopher Harlan; Sara Harlan; Philip Kirby; Jennie Aguayo; Alicia Kirby,

*Plaintiffs – Appellants*

v.

CrowdStrike, Incorporated; CrowdStrike Holdings, Incorporated,

*Defendants – Appellees*

*On Appeal from the United States District Court for the Western District of Texas, Austin Division, No. 1:24-cv-00881-RP, Hon. Robert Pitman*

## BRIEF OF DEFENDANTS-APPELLEES

Isabelle Ord
Andrew Serwin
Kylie Green
**DLA PIPER LLP (US)**
555 Mission Street
San Francisco, CA 94015
Tel:  415-836-2500

Jeffrey DeGroot
**DLA PIPER LLP (US)**
701 Fifth Avenue, Suite 6900
Seattle, WA 98104
Tel:  206-839-4800

Samantha L. Chaifetz
Sergio Filipe Zanutta Valente
**DLA PIPER LLP (US)**
500 Eighth Street, NW
Washington, DC 20004
Tel:  202-799-4000

Marcy Hogan Greer
**ALEXANDER DUBOSE & JEFFERSON LLP**
100 Congress Ave., Suite #1450
Austin, TX 78701
Tel:  512-482-9300

***Counsel for the Defendants-Appellees***

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. R. 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

The interested persons are as follows:

**1) Plaintiffs-Appellants**

Julio del Rio, Jack Murphy, Steven Bixby, Alicia Kirby, Philip Kirby, Jennie Aguayo, Christopher Harlan, and Sara Harlan.

**2) Counsel for Plaintiffs-Appellants**

Ben Barnow and Anthony L. Parkhill of Barnow and Associates, P.C.; Cory S. Fein of Cory Fein Law Firm; Robert K. Shelquist, Charles J. LaDuca, and Brendan S. Thompson of Cuneo Gilbert & LaDuca, LLP; Brian O. Marty and J. Barton Goplerud of Shindler, Anderson, Goplerud & Weese P.C.; Korey A. Nelson, Kyle Kilpatrick Oxford, and Warren T. Burns of Burns Charest LLP.

**3) Defendants-Appellees**

CrowdStrike, Inc. and CrowdStrike Holdings, Inc.

**4) Counsel for Defendants-Appellees**

John M. Guaragna, Mallory Biblo, Andrew Serwin, Isabelle
Ord, Jeffrey DeGroot, Samantha L. Chaifetz, Kylie Green, and
Sergio Filipe Zanutta Valente of DLA Piper LLP (US); Marcy
Hogan Greer of Alexander Dubose & Jefferson LLP.

/s/ *Samantha L. Chaifetz*
Samantha L. Chaifetz
*Counsel for Defendants-Appellees*

Date: October 31, 2025

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiffs-Appellants challenge a district court ruling deciding a single issue of express preemption under the Airline Deregulation Act, 49 U.S.C. § 41713. Because the ruling reflects a straightforward application of the legal precedents of this Court and the U.S. Supreme Court, Defendants-Appellees believe that oral argument is unnecessary. To the extent that this Court would find oral argument helpful, however, Defendants-Appellees stand ready to participate.

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons ................................................................i

Statement Regarding Oral Argument ...................................................... iii

Introduction ................................................................................................1

Jurisdictional Statement ............................................................................3

Statement of the Issue ...............................................................................3

Statement of the Case ................................................................................4

    A.    Legal Framework ..........................................................................4

    1.    Airline Deregulation Act ...............................................................4

    2.    Federal Regulation of Airline Passenger Compensation and Cybersecurity .................................................................................5

    B.    Factual and Procedural Background ...............................................7

    1.    Litigation Due to Delayed or Canceled Flights ......................7

    2.    Plaintiffs' Claims Dismissed as Preempted...........................11

Summary of Argument...........................................................................13

Standard of Review ................................................................................16

Argument.................................................................................................17

    The ADA Preempts Plaintiffs' Claims Because They Are "Related to" Airline Services...............................................................17

    A.    Plaintiffs' Claims, Which Are Premised on Canceled or Delayed Flights, Have a Direct "Connection with or Reference to" Airline Services................................................19

    1.    Plaintiffs' Claims Expressly Reference and Are Based on Airline Services. ...................................................................19

        a.    Plaintiffs' complaint is replete with express references to airline services. ........................................................19

b. Plaintiffs' reason for bringing suit is the disruption of airline services they experienced as airline customers. ...................................................................................21

2. Plaintiffs' Contrary Arguments Misunderstand the ADA's "Connection with and Reference to" Analysis. ......................25

a. Plaintiffs cannot ignore the centrality of airline services to their suit.....................................................26

b. Plaintiffs' criticism of the district court's analysis is misplaced.........................................................33

B. Alternatively, the ADA Preempts Plaintiffs' Claims Because They Would Have a Significant Effect on Prices and Services.................................................................35

1. The Significant-Effects Analysis Is an Alternate Route to Preemption—Not a Pre-requisite. .........................................36

2. The District Court Correctly Concluded that Plaintiffs' Claims Would Have Forbidden Significant Effects..............39

a. Plaintiffs' claims would have a significant effect on airline services. ............................................................40

b. Plaintiffs' claims would have a significant effect on airline prices...................................................................43

C. Plaintiffs Do Not Avoid Preemption by Alleging Personal-Injury or Products-Liability Claims. ....................................45

1. Plaintiffs' Personal-Injury Claims Are Preempted Because They Were Not Caused by the Faulty Operation or Maintenance of Aircraft. ........................................................45

2. Products-Liability Claims Are Not Categorically Excepted from Preemption. ...................................................................49

Conclusion ........................................................................52

Certificate of Compliance........................................................55

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Air Evac EMS, Inc. v. Sullivan,*
  8 F.4th 346 (5th Cir. 2021) ........................................................ *passim*

*Air Transp. Ass'n of Am., Inc. v. Cuomo,*
  520 F.3d 218 (2d Cir. 2008) ................................................................49

*Am. Airlines, Inc. v. Wolens,*
  513 U.S. 219 (1995).............................................................................39

*Bower v. EgyptAir Airlines Co.,*
  731 F.3d 85 (1st Cir. 2013) ................................................................49

*Butcher v. City of Hou.,*
  813 F. Supp. 515 (S.D. Tex. 1993) ....................................................48

*Charas v. Trans World Airlines,*
  160 F.3d 1259 (9th Cir. 1998) (en banc).............................................49

*Cleveland v. Piper Aircraft Corp.,*
  985 F.2d 1438 (10th Cir. 1993)............................................................51

*Costello v. BeavEx, Inc.,*
  810 F.3d 1045 (7th Cir. 2016)....................................................24, 41

*Dan's City Used Cars, Inc. v. Pelkey,*
  569 U.S. 251 (2013)............................................................................23

*Day v. SkyWest Airlines,*
  45 F.4th 1181 (10th Cir. 2022) ....................................................44, 45

*DiFiore v. Am. Airlines, Inc.,*
  646 F.3d 81 (1st Cir. 2011) ...............................................................24

*EagleMed LLC v. Cox,*
  868 F.3d 893 (10th Cir. 2017)............................................................37

*Elam v. Kan. City S. Ry. Co.*,
   635 F.3d 796 (5th Cir. 2011) ............................................................. 16

*Gordon v. Amadeus IT Grp., S.A.*
   194 F. Supp. 3d 236 (S.D.N.Y. 2016) .................................................. 31

*Hodges v. Delta Airlines Inc.*,
   44 F.3d 334 (5th Cir. 1995) .................................................... *passim*

*In re Am. Airlines, Inc., Priv. Litig.*,
   370 F. Supp. 2d 552 (N.D. Tex. 2005) .......................................... 30, 31

*Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*,
   283 F.3d 282 (5th Cir. 2002) ......................................... 17, 26–27, 35

*Malik v. Cont'l Airlines, Inc.*,
   305 F. App'x 165 (5th Cir. 2008) ....................................................... 16

*Mass. Delivery Ass'n v. Coakley*,
   769 F.3d 11 (1st Cir. 2014) ............................................................... 41

*Miller v. C.H. Robinson Worldwide, Inc.*,
   976 F.3d 1016 (9th Cir. 2020) .................................................... 24, 25

*Montgomery v. Delta Air Lines, Inc.*,
   2023 WL 2400743 (5th Cir. Mar. 8, 2023) .......................................... 39

*Morales v. Trans World Airlines*,
   504 U.S. 374 (1992) .......................................................... *passim*

*Northwest, Inc. v. Ginsberg*,
   572 U.S. 273 (2014) .......................................................... *passim*

*Onoh v. Nw. Airlines, Inc.*,
   613 F.3d 596 (5th Cir. 2010) ....................................................... 23, 38

*Pica v. Delta Air Lines, Inc.*,
   2019 WL 1598761 (C.D. Cal. Feb. 14, 2019), *aff'd*,
   812 F. App'x 591, 593 (9th Cir. 2020) ........................................ 29–30

*Pub. Health Tr. of Dade Cnty, Fla. v. Lake Aircraft, Inc.*,
   992 F.2d 291 (11th Cir. 1993) ............................................................ 51

*Rittinger v. Healthy All. Life Ins.*,
  914 F.3d 952 (5th Cir. 2019) ............................................................. 50

*Rowe v. New Hampshire Motor Transp. Ass'n*,
  552 U.S. 364 (2008) ............................................................ 25, 38, 41

*Tobin v. Fed. Express Corp.*,
  775 F.3d 448 (1st Cir. 2014) ............................................. 42, 43

*Travel All Over the World v. Kingdom of Saudi Arabia*,
  73 F.3d 1423 (7th Cir. 1996) ............................................. 35, 37

*US Airways, Inc. v. O'Donnell*,
  627 F.3d 1318 (10th Cir. 2010) ............................................. 52

## Statutes

28 U.S.C. § 1291 ............................................................................. 3

28 U.S.C. § 1332 ............................................................................. 3

49 U.S.C. § 1371(q) ....................................................................... 47

49 U.S.C. § 14501(c)(1) .............................................................. 23

49 U.S.C. § 41112(a) ................................................................... 47

Airline Deregulation Act (ADA), 49 U.S.C. § 41713 ...................... *passim*

FAA Reauthorization Act of 2024, 49 U.S.C. § 42305 ................. 5, 44, 45

FAA Reauthorization Act of 2024, Pub. L. No. 118-63 § 391 ................. 32

## Regulations

14 C.F.R. § 259.5 ............................................................................. 6

14 C.F.R § 260.5 ............................................................................. 5

14 C.F.R § 260.6 ............................................................... 5, 44, 46

49 C.F.R. § 1544.101................................................................ 32

Recommendation Regarding Emergency Action in Aviation,
  89 Fed. Reg. 28,569 (Apr. 19, 2024).............................................. *passim*

Federal Aviation Administration's Reauthorization Act of 2024,
  89 Fed. Reg. 99,760 (Dec. 11, 2024)..................................................8, 9

# INTRODUCTION

This is an appeal from a district court order dismissing a consolidated putative class action brought on behalf of airline passengers whose flights were delayed or canceled. The district court correctly held that the claims are all expressly preempted under the Airline Deregulation Act (ADA), 49 U.S.C. § 41713.

Plaintiffs-Appellants ("Plaintiffs") claim that they were harmed when their flights were disrupted in July 2024, allegedly due to defects in the cybersecurity software their airlines "relied on . . . to keep . . . airplanes flying as scheduled." ROA.364. (Compl. ¶ 209). Purportedly seeking to "remedy these consequences" (*i.e.*, alleged flight "delays and cancellations" and resulting "expenses and damages"), Plaintiffs filed state-law claims against the Defendants-Appellees CrowdStrike, Incorporated and CrowdStrike Holdings, Incorporated (collectively, "CrowdStrike"), alleging they provide cybersecurity software licensed by the airlines. ROA.315 (Compl. ¶ 8).

Because Plaintiffs' claims directly relate to flight disruptions, the district court found that they are preempted by the ADA. The ADA preemption provision, 49 U.S.C. § 41713(b)(1), bars state-law claims

1

"related to a price, route, or service of an air carrier." As the Supreme Court and this Court have recognized, the provision is deliberately expansive; claims relate to airline prices or services under Section 41713 if they either have "a 'connection with or reference to'" prices or services "or present[ ] a 'significant effect' on" prices or services. *Air Evac EMS, Inc. v. Sullivan*, 8 F.4th 346, 351 (5th Cir. 2021) (quoting *Morales v. Trans World Airlines*, 504 U.S. 374, 384, 388 (1992)).

Plaintiffs misread this legal standard and suggest that preemption requires both (1) a connection with or reference to prices, routes, or services and (2) a forbidden significant effect on the same. But, under this Court's precedents, the test is disjunctive, so satisfying either prong results in preemption. *See Air Evac EMS*, 8 F.4th at 351.

In any event, the district court correctly found Plaintiffs' claims satisfy both prongs. In reaching this conclusion, the district court accepted the allegations in Plaintiffs' complaint and found that, "by Plaintiffs' own allegations, the services CrowdStrike offers are core to the provision of airline services." ROA.557 n.1.

On appeal, Plaintiffs attempt to replead their case as one exclusively "related to" the alleged defects in CrowdStrike's cybersecurity

2

software. But this misconceived effort cannot succeed. Plaintiffs' suit is necessarily "related to" airline services—it is the disruption of their flights that is the source of their alleged injuries. Plaintiffs' reason for suing, and standing to do so, is tied to those core airline services. In the absence of the flight disruptions at issue, Plaintiffs would have no claims against CrowdStrike.

Because Plaintiffs' claims are related to airline services, this Court should affirm.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1332, and entered final judgment on June 18, 2025, dismissing Plaintiffs' suit. ROA.563. Plaintiffs appealed on June 25, 2025. ROA.564. This Court has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court properly concluded that Plaintiffs' claims that they were harmed by flight delays and cancellations relate to airline services and are thus preempted by the Airline Deregulation Act, 49 U.S.C. § 41713.

## STATEMENT OF THE CASE

### A.    Legal Framework

### 1.    Airline Deregulation Act

Congress enacted the Airline Deregulation Act, 49 U.S.C. § 41713, with the express objective of deregulating the interstate airline industry to promote "efficiency, innovation, and low prices' as well as 'variety [and] quality'" in air transportation services. *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 378 (1992) (alteration in original) (quotation omitted). "To ensure that the States would not undo federal deregulation with regulation of their own," and to prevent the airline industry from being subject to a patchwork of inconsistent state laws, "the ADA included a pre-emption provision, prohibiting the States from enforcing any law 'relating to rates, routes, or services' of any air carrier." *Id.* at 378–79 (quotation omitted). Section 41713(b)(1) provides that "a State . . . may not enact or enforce a law, regulation, or other provision having the force and effect of law ***related to*** a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1) (emphasis added).

**2.    Federal Regulation of Airline Passenger Compensation and Cybersecurity**

Consistent with the ADA's goal of ensuring that regulation of the interstate airline industry remains exclusively federal, Congress, along with the United States Department of Transportation ("DOT"), mandates remedies to which airline passengers are entitled for flight disruptions. The federal government also imposes cybersecurity requirements on airlines to prevent disruption and degradation of critical infrastructure.

First, under the Federal Aviation Administration's Reauthorization Act of 2024 ("FAARA"), airlines are required to provide "a full refund" of the fare for "any cancelled flight or significantly delayed or changed flight," to any passenger who does not accept the delayed, changed, or rebooked travel or any other compensation offered. 49 U.S.C. § 42305(a). The DOT has promulgated implementing regulations addressing these refunds of airline fares, 14 C.F.R § 260.6, as well as ancillary services, *e.g.*, 14 C.F.R § 260.5 (addressing, for example, compensation for lost luggage). *See generally* 14 C.F.R Part 260. These federal provisions regulate how carriers compensate their passengers in the event of significant flight disruptions within the carriers' control.

5

In addition, under DOT regulations, covered carriers must adopt and adhere to customer-service plans, which inform passengers of the accommodations that airlines will provide to them in the event of significant flight disruptions. *See* 14 C.F.R. § 259.5. Service plans include, for example, the airlines' plans for flight rebooking, frequent-flyer mile compensation, and expense reimbursements. *Id*. The DOT maintains an online dashboard that outlines each airline's commitments "to mitigate passenger inconveniences when the cause of a cancellation or delay was due to circumstances within the airline's control." U.S. Dep't of Transp., *Airline Cancellation and Delay Dashboard*, https://perma.cc/4FL8-DH3N. The DOT dashboard explains that "[a]irlines are required to adhere to the promises that they make in their customer service plan, including commitments to care for customers in the event of controllable delays or cancellations," and that the DOT "will hold airlines accountable" for failing to adhere to their customer service plans. *Id.*

Second, the Transportation Security Administration ("TSA") requires airlines to implement cybersecurity measures. *See, e.g.*, 89 Fed. Reg. 28,569 (Apr. 19, 2024) (describing TSA's issuance of Joint Emergency Amendment (EA) 23-01 on March 7, 2023 as "amend[ing] the

6

security programs . . . to require performance-based cybersecurity measures"). The precise terms of these requirements and the cybersecurity plans submitted by the carriers constitute Sensitive Security Information not available to the public. *Id.* at 28,569 n.1. But some information is known: TSA has described its security programs as requiring, *inter alia*, airlines to adopt "an approved implementation plan" that includes "measures . . . to improve their cybersecurity resilience and prevent disruption and degradation to their infrastructure," such as "continuous monitoring and detection" procedures to "defend against, detect, and respond to cybersecurity threats." U.S. Transp. Sec. Admin., *TSA issues new cybersecurity requirements for airport and aircraft operators* (Mar. 7, 2023), https://perma.cc/NVX7-AQRF.

## B.     Factual and Procedural Background

### 1.     Litigation Due to Delayed or Canceled Flights

Plaintiffs in this consolidated putative class action[1] are airline passengers who seek to recover from CrowdStrike for harms they allegedly

---

[1] This litigation began as two separately filed putative class actions. *See* ROA.18–44, 592–624. After the district court consolidated the cases, ROA.295–304, Plaintiffs filed their consolidated class action complaint. ROA.313–70. (All references in this brief to Plaintiffs' complaint are to the consolidated class action complaint.)

suffered when their flights were delayed or canceled as a result of what they term the "CrowdStrike Outage" on July 19, 2024. ROA.314–15 (Compl. ¶¶ 3, 8); Brief of Appellants ("Br.") 1 (defining "CrowdStrike Outage").

According to Plaintiffs' complaint, CrowdStrike's "Falcon platform" is software "used by airlines and airports" to "protect systems against potential threats in a bid to minimize cybersecurity risks." ROA.328, 346. (Compl. ¶¶ 83, 142). Plaintiffs allege that a Falcon platform update released on July 19, 2024, contained errors that caused certain airlines' Microsoft Windows-running computer systems "to repeatedly crash," resulting in Plaintiffs' flights being delayed or canceled. ROA.337, 350–51. (Compl. ¶¶ 112, 155–57). According to Plaintiffs, it was CrowdStrike's "failure to properly develop, test, and deploy the Falcon update" that "resulted in the delay or cancellation of Plaintiffs' and Class members' flights." ROA.315 (Compl. ¶ 8). Plaintiffs' "action seeks to remedy these consequences." ROA.315 (*Id.*).

Before Plaintiffs commenced this litigation, the DOT determined that the flight cancellations and delays at issue were "controllable events" under FAARA. 89 Fed. Reg. 99,760 (Dec. 11, 2024) (explaining

that "the issue [was] a computer outage of the carrier's equipment" and therefore within the airlines' control). This meant airlines were required to compensate affected passengers pursuant to their customer-service plans and consistent with federal law. *See supra* pp. 5–6.

Plaintiffs' complaint underscores the key role of CrowdStrike's services in the airlines' ability to provide transportation services to their passengers. Plaintiffs' complaint stresses that airlines "rely heavily on cyber and network support to operate the[ir] essential systems." ROA.346 (Compl. ¶ 143). And, consistent with the airlines' alleged reliance on CrowdStrike's critical cybersecurity services, Plaintiffs maintain that the CrowdStrike Outage "'affected many separate [airline] systems, such as those used for calculating airline weight, checking in customers, and phone systems in [airline] call centers.'" ROA.350 (Compl. ¶ 155) (quoting United Airlines statement). According to the complaint, as a result, "airlines were ground to a halt by the CrowdStrike Outage." ROA.350 (Compl. ¶ 155); ROA.351 (Compl. ¶ 156) (noting that several major U.S. carriers issued "ground stops for all their flights").

The complaint alleges that "CrowdStrike knew that if its airline customers' computer networks and endpoints failed, then their systems

for finding crew, safely maintaining airplanes, and commencing air flights one after another would sustain a meltdown like the CrowdStrike Outage, and the airlines would be unable to operate normally and provide services to their passengers, such as Plaintiffs and Class members." ROA.362 (Compl. ¶ 197). The complaint further alleges that "CrowdStrike's airline customers and their passengers, including Plaintiffs and other Class members, relied on CrowdStrike's performance of its ongoing services to keep CrowdStrike's airline customers' airplanes flying as scheduled, among other things." ROA.364 (Compl. ¶ 209); *see also* ROA.356 (Compl. ¶ 174) (describing CrowdStrike's Falcon platform as "necessary to protect . . . the airlines' customers" from "inoperable computer systems that impaired the airlines' operations"); ROA.364 (Compl. ¶ 207) (alleging CrowdStrike "knew its cybersecurity system" was "necessary for protecting air passengers from . . . impaired flights").

Based on these allegations, Plaintiffs assert state-law claims for negligence and public nuisance—all stemming from the flight delays and cancellations allegedly resulting from the CrowdStrike Outage.[2]

---

[2] All of Plaintiffs' alleged injuries (and therefore Plaintiffs' standing) are attributed to flight delays and cancellations—such as "lost time," "interruption to their freedom of movement," and "unreimbursed

## 2.    Plaintiffs' Claims Dismissed as Preempted

CrowdStrike moved to dismiss Plaintiffs' complaint on several grounds, including that the ADA preempts Plaintiffs' claims. ROA.392–455. The district court granted CrowdStrike's motion, concluding that Plaintiffs' claims "relate to airline services" and are preempted by the ADA. ROA.559 (determining "that the ADA preempts Plaintiffs' state-law claims against CrowdStrike, as a cybersecurity firm whose functions at issue here relate to airline services").

First, the district court explained that Plaintiffs' suit "concern[s] the impacts of flight delays and cancellations and the failure of airlines to adequately reschedule or compensate for them" and "relate[s] directly to 'airline services' such as 'ticketing, boarding procedures, provision of food and drink, and baggage handling, in addition to the transportation

---

expenses." ROA.351–52 (Compl. ¶ 159). Several Plaintiffs assert that they suffered "personal injuries" because they were unable to travel on their flights as originally scheduled. Plaintiff del Rio complains he of back and neck pain, allegedly caused by sleeping on airport benches during his flight delay. ROA.316 (Compl. ¶ 15). Plaintiff Aguayo alleges she suffered "anxiety, chest pains, and headaches due to the stress caused by the CrowdStrike Outage impact on her travel." ROA.323 (Compl. ¶ 57). Plaintiff Murphy claims that flight delays and cancellations caused him to arrive home in the early hours of the morning, allegedly interrupting his "sleep schedule" and "caus[ing] him to suffer a migraine." ROA.318 (Compl. ¶ 24).

itself,' which are preempted." ROA.556 (citing *Hodges v. Delta Airlines Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (en banc)). "[B]y Plaintiffs' own allegations," the court observed, "the services CrowdStrike offers are core to the provision of airline services." ROA.557 n.1. The court also explained that the ADA preempts Plaintiffs' claims even though CrowdStrike is not an airline. ROA.557 ("That the Plaintiffs here bring their suit against CrowdStrike, rather than against the airlines themselves, does not prevent ADA preemption.").

Second, the district court separately found that "Plaintiffs' claims are also preempted because they would affect airline regulation and have a 'significant effect' on airline services." ROA.559. The district court concluded that "the airlines would experience significant effects from the enforcement of state tort law in this manner on CrowdStrike, akin to federal regulation, because cybersecurity vendors would have an incentive to change their practices and services for airlines specifically." ROA.559–60. The district court noted that "Plaintiffs acknowledge their suit could change cybersecurity protocols in airline services or at least is intended to do so." ROA.562.

Finally, the district court rejected Plaintiffs' argument that a personal-injury exception applies given that "Plaintiffs do not claim they were injured because of how an aircraft was operated or maintained." ROA.561. "Rather, because their claims concern the airlines' services and would have an impact on future service operations, they are preempted." ROA.561.

The district court entered a final judgment dismissing Plaintiffs' claims on June 18, 2025. ROA.563. Because the district court found Plaintiffs' claims were preempted, it did not address CrowdStrike's other grounds for dismissal. Plaintiffs appealed. ROA.564–65.

## SUMMARY OF ARGUMENT

The Airline Deregulation Act includes a sweeping express preemption provision barring state-law claims "related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). This Court has recognized that, under this broad provision, a claim is preempted if it (1) makes a connection with, or reference to, airline prices, routes, or services, *or* (2) would have a significant effect on airline prices, routes, or services. *See, e.g.*, *Air Evac EMS, Inc. v. Sullivan*, 8 F.4th 346, 352 (5th Cir. 2021).

Contrary to Plaintiffs' contention, the test is disjunctive: The Court need not evaluate "significant effects," if Plaintiffs' claims' "connection with or reference to" airline prices, routes, or services is established, or vice versa. Here, because Plaintiffs' claims satisfy both conditions, the Court may affirm on either basis.

*First*, Plaintiffs' claims are expressly connected to airline services. The gravamen of Plaintiffs' complaint is that they allegedly suffered harm when their flights were disrupted due to defects in the cybersecurity software used by the airlines. As the district court correctly observed, it is telling that claims brought directly against an airline for these disruptions would be preempted. ROA.556. Plaintiffs cannot evade ADA preemption by filing suit against CrowdStrike, the software provider, in place of the airlines. Plaintiffs' alleged injuries, and therefore standing to bring their suit, are still based on their delayed or canceled flights, *i.e.*, problems with the provision of core airline services.

Plaintiffs attempt to obscure this connection to airline services by arguing that CrowdStrike's cybersecurity software is not itself an airline service. But the nature of CrowdStrike's product does not change the fact that Plaintiffs' *claims*—the focus of the preemption analysis—relate to

14

airline services. Furthermore, as Plaintiffs' complaint alleges, CrowdStrike's software is integral to airlines' operations, including their ability to operate flights and serve passengers.

*Second*, Plaintiffs' claims also satisfy the alternate "forbidden significant effects" test: Plaintiffs' claims—which seek to impose a standard of care on airlines' cybersecurity practices and expose airline vendors to vast liability—would significantly affect services and prices. As the district court noted, even Plaintiffs acknowledge their suit "is intended" to "change cybersecurity protocols in airline service." ROA.562.

In an effort to save their case, Plaintiffs suggest that their claims evade ADA preemption because they involve tort-based personal-injury or product-liability claims. But Plaintiffs' claims are based on flight disruptions—even where they allege physical injuries, such as migraines due to a disrupted sleep schedule—and so fall squarely within the category of claims that Congress intended to preempt. Conversely, such claims are far outside the limited category of claims for personal injuries caused by the operation and maintenance of aircraft (*e.g.*, a passenger injured in an aircraft collision) that this Court has recognized are not preempted. Likewise, whether Plaintiffs' claims sound in product

liability is of no moment. The only relevant question is whether the claims relate to airline services, and Plaintiffs' claims do.

This Court should affirm.

## STANDARD OF REVIEW

The Court reviews *de novo* an order dismissing claims based on federal preemption. *See Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 802 (5th Cir. 2011) ("The preemptive effect of a federal statute is a question of law we review *de novo*."); *see also Malik v. Cont'l Airlines, Inc.*, 305 F. App'x 165, 167 (5th Cir. 2008) (per curiam) (reviewing *de novo*, and affirming, dismissal of state-law claims based on ADA preemption).

# ARGUMENT

## THE ADA PREEMPTS PLAINTIFFS' CLAIMS BECAUSE THEY ARE "RELATED TO" AIRLINE SERVICES.

The district court correctly ruled that Plaintiffs' claims are preempted by the ADA. Under the ADA's express preemption provision, a State "may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier that may provide air transportation under this subpart." 49 U.S.C. § 41713(b)(1).

This broad preemption provision reaches common-law claims against airlines' vendors. The Supreme Court held in *Northwest, Inc. v. Ginsberg*, 572 U.S. 273 (2014), that the provision precludes claims brought under either state statutes or, as relevant here, state common law. *See id.* at 281. It is also undisputed that ADA preemption "is not limited to claims brought directly against air carriers," *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 289 n.8 (5th Cir. 2002), and that courts apply ADA preemption to claims against vendors. Br. 19.

The sole question is whether a claim is "related to" airline prices, routes, or services. The Supreme Court has explained that the "related to" phrase has an "expansive sweep." *Morales v. Trans World Airlines,*

17

*Inc.*, 504 U.S. 374, 383–84 (1992) (quotation omitted); *see Ginsberg*, 572 U.S. at 283 (recognizing that the ADA's preemption provision is "much more broadly worded" than the typical provision). The Supreme Court has held that "[s]tate enforcement actions having a connection with or reference to airline 'rates, routes, or services' are preempted" under the ADA. *Morales*, 504 U.S. at 384. In *Morales*, for example, the Court found that claims making "express reference" to airfares established the requisite connection. *Id.* at 388. The Court also found that, "[i]n any event," the claims "related to" airline prices and were thus preempted because they would have a "forbidden effect" on fares. *Id.*

Consistent with *Morales*, this Court has held that a claim "relate[s] to" airline prices, routes or services "so long as it has a '**connection with or reference to**'" airline prices, routes, or services, "'**or** presents a '**significant effect**' on" airline prices, routes, or services. *Air Evac EMS, Inc. v. Sullivan*, 8 F.4th 346, 351 (5th Cir. 2021) (emphasis added). Contrary to Plaintiffs' suggestion (Br. 23), claims are thus preempted under 49 U.S.C. § 41713(b)(1) if either test is satisfied. And here—as explained below—the district court correctly concluded that Plaintiffs' claims satisfy both tests.

**A.    Plaintiffs' Claims, Which Are Premised on Canceled or Delayed Flights, Have a Direct "Connection with or Reference to" Airline Services.**

**1.    Plaintiffs' Claims Expressly Reference and Are Based on Airline Services.**

Plaintiffs' complaint leaves no doubt that their claims are related to airline services. *See* ROA.315 (Compl. ¶ 8). Under Supreme Court precedents, a claim relates to airline services if it makes a connection with or reference to those services—either because (1) the claim expressly refers to those services or (2) because the plaintiff's very reason for seeking relief is based on airline services. Both are true here.

**a.    Plaintiffs' complaint is replete with express references to airline services.**

The Supreme Court established in *Morales* that the ADA preempts claims if they "express[ly] reference" airline prices, routes, or services. 504 U.S. at 384. Plaintiffs' complaint is predicated on airline services. *See, e.g.*, ROA.346, 350–51, 356, 364. (Compl. ¶¶ 143, 155, 174, 207, 209). The Court need not look any further than Plaintiffs' own description of their claims in their complaint's introduction: Plaintiffs assert CrowdStrike's negligence "resulted in the delay or cancellation of Plaintiffs' and Class Members' flights." ROA.315 (Compl. ¶ 8). According

to Plaintiffs, the delays and cancellations harmed Plaintiffs, including "forc[ing] Plaintiffs and Class Members to incur additional and unexpected expenses and damages." ROA.315 (*Id.*).

Furthermore, Plaintiffs allege a direct connection between the CrowdStrike Outage, Plaintiffs' airline services, and their alleged injuries. They contend that the CrowdStrike Outage "'affected many'" airline systems, disrupting their planned services. ROA.350 (Compl. ¶ 155) (quoting United Airlines statement); *see, e.g.*, ROA.556 (accepting Plaintiffs' allegations that a variety of airline services, from "ticketing" to "the transportation itself" were affected). Plaintiffs expressly allege that the airlines' "passengers, including Plaintiffs and other Class members, ***relied on CrowdStrike's performance of its ongoing services to keep CrowdStrike's airline customers' airplanes flying as scheduled***, among other things." ROA.364. (Compl. ¶ 209) (emphasis added).

In short, Plaintiffs' suit places airline services—the canceled or delayed flights—at the center of their claims. Under *Morales*, Plaintiffs' repeated and express references to canceled or delayed flights establish that the claims relate to airline services and are therefore preempted.

### b.   Plaintiffs' reason for bringing suit is the disruption of airline services they experienced as airline customers.

The Supreme Court explained in *Ginsberg* that a claim relates to an airline service if the plaintiffs' "reason for seeking [relief]" involves the service. 572 U.S. at 285. Here, Plaintiffs seek relief because of the disruption in core airline services (including flight delays and cancellations) they allegedly experienced as airline customers. *See, e.g.*, ROA.315 (Compl. ¶ 8). This falls squarely in the category that *Ginsberg* identifies as satisfying the ADA's preemption provision, 49 U.S.C. § 41713.

In *Ginsberg*, an airline passenger brought common-law claims seeking the "reinstatement of his membership" in a frequent flyer program. 572 U.S. at 285. He argued that his claim did not relate to prices, routes, or services because he did not "challenge access to flights and upgrades." *Id.* at 284–85. The Supreme Court rejected this argument because it "ignore[d] respondent's ***reason*** for seeking reinstatement of his membership, *i.e.*, to obtain reduced rates and enhanced services." *Id.* at 285 (emphasis added). In other words, although the respondent's allegation of a breach focused on the denial of a membership rather than the denial of flights or fares, his alleged injury—the reason he cared

21

about denial of his membership—had everything to do with lost access to flights and better flight fares, *i.e.*, services and prices.

The same is true here. On appeal, Plaintiffs seek to recast their case as based only on alleged cybersecurity software defects. But it was the resulting disruption of airline services (including flight delays or cancellations and attendant "expenses and damages") that provided Plaintiffs with their reason for seeking relief from CrowdStrike and their standing to do so. As Plaintiffs' complaint explains, their "action seeks to remedy these consequences." ROA.315 (Compl. ¶ 8). After all, if the same alleged software issues had occurred but Plaintiffs' flights had not been canceled or delayed, they would not have sued CrowdStrike.[3]

Plaintiffs suggest that the ADA does not preempt their claims because they allege a ***breach*** of a duty of care of a software provider. *See, e.g.*, Br. 19. But the Supreme Court's decision in *Ginsberg* establishes that a claim may relate to airline services in multiple ways—including if, as here, the alleged ***injury*** is premised on the loss of airline services.

---

[3] Plaintiffs do not claim to be customers of CrowdStrike; their only alleged connection to CrowdStrike is the airplane flights at issue.

*Ginsberg*'s approach, which reads "related to" broadly, accords with congressional intent. Elsewhere, when Congress has intended to limit the reach of a preemption provision that uses the phrase "related to," it has added qualifying language.[4] Here, Congress chose not to include any limiting language in the ADA's preemption provision and did not require that claims exclusively, entirely, or even predominantly relate to airline services. The only requirement is that the claims' connection to services is not "too tenuous, remote, or peripheral." *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010) ("Any state law, including state common law, 'having a connection with or reference to' airline prices, routes, or services is preempted unless the connection or reference is 'too tenuous, remote, or peripheral.'") (quoting *Morales*, 504 U.S. at 384, 390)).

Here, the connection between Plaintiffs' claims and airline services is anything but "tenuous." As discussed above, flight delays and

---

[4] For example, the preemption provision in the Federal Aviation Administration Authorization Act ("FAAAA") mirrors the ADA's provision, except that Congress added a qualifying phrase. 49 U.S.C. § 14501(c)(1). The Supreme Court has noted that, although the FAAAA provision "otherwise tracks the ADA's air-carrier preemption provision," this "conspicuous alteration . . . 'massively limits the scope of preemption' ordered by the FAAAA." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013).

cancellations are the source of Plaintiffs' alleged injuries and are central—not peripheral—to Plaintiffs' suit against CrowdStrike. *See, e.g.*, ROA.558–59.

The connection to airline services is particularly strong where, as here, the claims relate to the relationship between airlines and their customers. As other federal circuit courts have explained, "[l]aws that affect the way a carrier interacts with its customers fall squarely within the scope of . . . preemption." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1054 (7th Cir. 2016) (distinguishing cases involving the relationship of a carrier with employees); *accord, e.g.*, *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1024 (9th Cir. 2020) (holding common-law claim related to carrier services because it addressed "the point at which [the carrier] provides a 'service' to its customers"); *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 88 (1st Cir. 2011) (concluding that a tip law was preempted because it "directly regulate[d] how an airline service is performed and how its price is displayed to [the] customer[ ]").[5]

---

[5] *Costello* and *Miller* involve the FAAAA, while *DiFiore* involves the ADA. The FAAAA is "modeled on the ADA" and uses the same "related to" language, so courts look to precedents from both statutes as guides for the relatedness inquiry, *Miller*, 976 F.3d at 1024 n.6—although the FAAAA includes other limitations not relevant to this analysis. *See supra*

Plaintiffs' suit against CrowdStrike is premised on their status as airline customers. Plaintiffs allege defects in CrowdStrike's cybersecurity software left airlines unable to provide transportation services to airline customers, including Plaintiffs. ROA.314–15 (Compl. ¶¶ 5–6) (asserting that the CrowdStrike outage "caus[ed] a cascade of flight delays and cancellations" and "interfered with" their airline services). The connection between Plaintiffs' claims and airline services is clear and direct—not tenuous, remote, or peripheral. *Cf. Miller*, 976 F.3d at 1024.

### 2.    Plaintiffs' Contrary Arguments Misunderstand the ADA's "Connection with and Reference to" Analysis.

Plaintiffs advance an incorrect framework for analyzing preemption under the ADA. They contend that their claims are not preempted because CrowdStrike's cybersecurity software is not an "airline service." Br. 19. But Plaintiffs' narrow focus on CrowdStrike's product, rather than their own claims, contravenes both the ADA's text and this Court's precedent. The district court correctly examined how central airline services are to Plaintiffs' claims, ROA.557, and properly

---

note 4. Plaintiffs apparently agree because they also rely on FAAAA cases in their brief, including *Rowe v. New Hampshire Motor Transportation Ass'n*, 552 U.S. 364 (2008). *See* Br. 23.

considered how integral CrowdStrike's cybersecurity software is to airlines' provision of those services. ROA.556.

### a. Plaintiffs cannot ignore the centrality of airline services to their suit.

As Plaintiffs tell it, their claims are not preempted because furnishing cybersecurity software to airlines is not an "airline service." *E.g.*, Br. 16, 23 (noting that "[t]he mere fact that some airlines use CrowdStrike's software does not convert cybersecurity software development into an airline service"). But Plaintiffs miss the point: The question under Section 41713(b)(1) is whether Plaintiffs' particular ***claims*** relate to airline services—not whether CrowdStrike's product ***is*** an airline service. *See* ROA.557 ("Plaintiffs' claims concern the services they received from their respective airlines . . . .").

Both the ADA's text and precedent require this Court to focus on the nature of Plaintiffs' claims, rather than Defendant CrowdStrike's product. The ADA prohibits states from enacting or enforcing a "provision . . . related to a price, route, or service," 49 U.S.C. § 41713(b)(1), and, under *Ginsberg*, "provision" includes common-law claims. 572 U.S. at 281–82. The ADA asks whether there is a relationship between the claim and the airline services. *See, e.g.*, *Lyn-Lea Travel*

*Corp.*, 283 F.3d at 289 (explaining that the ADA asks whether the "***claims*** relate to" prices, routes, or services (emphasis added)). As the district court explained, this analysis is straightforward here: Plaintiffs' claims relate to airline services because they are based on canceled or delayed flights. *See* ROA.559.

Even if this Court focuses on CrowdStrike's product, the result is the same: CrowdStrike's cybersecurity software relates to airline services because the software is an essential component of the airlines' provision of flights. Plaintiffs mistakenly counter that CrowdStrike's software "does not provide or assist airlines in providing any service to passengers" and therefore is unrelated to airline services. Br. 20–21. Plaintiffs' view cannot be squared with their own admissions and allegations.

Plaintiffs do not dispute that flights are airline services. Br. 17 (identifying transportation as an airline service). They acknowledge, more broadly, that airline services "encompass[ ] benefits passengers expressly pay airlines to provide" and "***functions necessary to deliver those benefits to passengers***." Br. 18 (emphasis added).

Plaintiffs' allegations confirm that CrowdStrike's cybersecurity software fits comfortably within this definition of services. Plaintiffs'

27

complaint stresses that the airlines relied on CrowdStrike's cybersecurity software to continue operating their flights, *i.e.*, to provide services to passengers. *See, e.g.*, ROA.364 (Compl. ¶ 209) ("***CrowdStrike's airline customers*** and their passengers, including Plaintiffs and other Class members, ***relied on*** CrowdStrike's performance of its ongoing services to keep CrowdStrike's airline customers' airplanes ***flying as scheduled***, among other things." (emphasis added)); *see also, e.g.*, ROA.346 (Compl. ¶ 143) (recognizing that airlines "rely heavily on cyber and network support to operate the[ir] essential systems"); ROA.362 (Compl. ¶ 197) (asserting that airlines "would be unable to operate normally and provide services to their passengers" without working computer networks).

These allegations show that the role of CrowdStrike's cybersecurity software in the provision of airline services is central to Plaintiffs' case. Having structured their complaint around these allegations, Plaintiffs cannot contend that CrowdStrike's software is unrelated to the airlines' provision of passenger transportation. As the district court correctly concluded, "by Plaintiffs' own allegations, the services CrowdStrike offers are core to the provision of airline services." ROA.557 n.1.

It does not matter that CrowdStrike is a vendor to airlines, rather than an airline itself. Plaintiffs accept—as they must—that "[c]ourts apply ADA preemption to claims against vendors." Br. 19. Nonetheless, Plaintiffs erroneously argue that their claims are not preempted because CrowdStrike does not play a "direct, active role in airlines' provision of services to passengers." *Id.*

Plaintiffs do not—and cannot—cite any decision of this Court identifying such a standard or requirement. The only question is whether Plaintiffs' claims relate to airline services. 49 U.S.C. § 41713. Plaintiffs seek, in short, to impose a requirement that is not supported by the ADA or case law. Moreover, Plaintiffs' argument ignores the critical role CrowdStrike's cybersecurity software plays in airlines' provision of flights and contradicts Plaintiffs' own allegations recognizing this connection, which their claims rely on. *See supra* Part A.1.a.

As the district court reasoned, the claims here are like those in other cases where courts have found state-law claims "relating to" airline services preempted against airline vendors, even though the vendors simply supported the airlines in providing airline services and also provided similar support to non-airlines. *See Pica v. Delta Air Lines, Inc.*,

No. 18-2876, 2019 WL 1598761, at *9 (C.D. Cal. Feb. 14, 2019), *aff'd*, 812 F. App'x 591, 593 (9th Cir. 2020); *see also In re Am. Airlines, Inc., Priv. Litig.*, 370 F. Supp. 2d 552, 564 (N.D. Tex. 2005). Plaintiffs' effort to distinguish those cases fails. Br. 19–20.

In *Pica*, the court found that the ADA preempted a state-law negligence claim against a vendor that provided voice and chat services for sales and support to an airline. 2019 WL 1598761, at *9. The court reasoned that it was "irrelevant" that the vendor did not exclusively provide the voice and chat services to airlines. *Id.* Nor did the ADA require that the vendor provide airline services directly for preemption to apply. It sufficed for the ADA that the services the vendor was offering "relate[d] to" the services the airline was ultimately providing to its customers. *Id.*

Similarly, in *American Airlines*, airline customers brought state-law claims against a vendor that helped maintain the airline's website and private research companies to which the vendor disclosed the plaintiffs' information. 370 F. Supp. 2d at 555. The court found the ADA preempted the claims brought against both the vendor and the private research companies because the claims were "based on conduct that

*relates to* [the airline's] ticketing service and its reservation component."
*Id.* at 564–65 (emphasis added).

Further, in *Gordon v. Amadeus IT Group, S.A.*—a case cited by the
district court that Plaintiffs do not address—the court found the ADA
preempted state antitrust and consumer-protection claims brought
against non-airline technology providers. 194 F. Supp. 3d 236, 244
(S.D.N.Y. 2016). The court rejected the plaintiffs' argument that, because
they were not suing airlines directly, their claims did not sufficiently
"relate to" airline prices and services. *Id.* at 243. Rather, the court
reasoned that "[i]n light of the Supreme Court's broad interpretation of
the ADA's 'relating to' language . . . th[e] distinction does not remove
Plaintiffs' claims from the scope of ADA preemption" when they
necessarily "relate[ ] to" airline services. *Id.* at 244. "To predicate the
ADA's preemptive effect on the identity of the defendant would permit
states to make an end-run around Congress' intended deregulation of
airlines." *Id.*

Plaintiffs attempt to make such an "end-run around Congress'
intended deregulation of airlines," *id.*, by arguing that the cybersecurity
platform CrowdStrike licenses to airlines to use "on their internal IT

31

systems" is wholly separate from airline services. Br. 19. That is contradicted "by Plaintiffs' own allegations," which show that "the services CrowdStrike offers are core to the provision of airline services." ROA.557 n.1; *see also* Br. 18 (defining "services" to include "functions necessary to deliver [paid-for] benefits to passengers"). And the district court did not err by accepting Plaintiffs' allegations and arguments that the airlines' provision and scheduling of flights relied on, and were thus intertwined with, CrowdStrike's cybersecurity software.

Moreover, federal law belies Plaintiffs' argument that cybersecurity software is unrelated to airline services. Congress has tasked the FAA with setting standards for aviation cybersecurity. *See, e.g.*, Pub. L. No. 118-63 § 391. Additionally, federal regulations require passenger airlines to meet certain security requirements, including developing and maintaining cybersecurity systems. *See* 49 C.F.R. § 1544.101 (requiring certain airport and aircraft operators to adopt and carry out a security program approved by TSA); *see also* 89 Fed. Reg. 28,569 (Apr. 19, 2024) (amending security program requirements to include performance-based cybersecurity measures). These regulatory requirements reflect the federal government's determination that cybersecurity is essential to

providing airline services. These additional federal regulations may inform this Court's interpretation of the ADA's preemption provision. *Cf. Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 338 (5th Cir. 1995) (en banc) (using an aviation insurance provision to guide its analysis of the ADA preemption provision).

### b.  Plaintiffs' criticism of the district court's analysis is misplaced.

Plaintiffs devote a section of their brief to arguing that it was reversible error for the district court to consider whether their claims would be preempted if brought against an airline directly. Br. 39–43. But there was no error in the court's observation that, "[a]s an initial matter, Plaintiffs' claims would be preempted if they were brought against the airlines themselves." ROA.556. This was the proper starting place for the court's analysis; no party suggests that claims that would ***not*** be preempted against an airline under the ADA would be preempted against an airline's vendor. The district court then went on to properly conclude that, as discussed above, such a claim is ***also*** preempted when, as here, it is brought against a company in its role as an airline's vendor. *See supra* pp. 29–32.

Plaintiffs' unwarranted objection to the district court's observation only underscores the error in their analysis—namely, their mistaken view that the court must consider only CrowdStrike's cybersecurity product in isolation. The district court's reference to a hypothetical suit against an airline aptly reflects the fact that CrowdStrike's cybersecurity software cannot be divorced from the canceled or delayed flights that gave rise to Plaintiffs' suit. Put another way, the court correctly understood that the preemption analysis is driven by the nature of Plaintiffs' suit—not Defendant CrowdStrike's identity or product.[6]

Unsurprisingly, Plaintiffs do not identify any cases finding anything improper about a court illustrating a component of its preemption analysis with a hypothetical. Plaintiffs instead cite cases that stand for undisputed propositions, including (as CrowdStrike has explained) that claims are preempted when they either reference or would have a significant effect on airline prices, routes, or services.

---

[6] Whether, for example, an airline opts to outsource its cybersecurity program or to develop it in house, the role of the program remains the same. If a defect in cybersecurity software developed in-house caused the airline to cancel passengers' flights, ADA preemption would bar passengers (like Plaintiffs here) from suing to recover for damages resulting from those cancellations. As the district court recognized, the result here should be no different.

Br. 40–42 (citing, *e.g.*, *Morales*, 504 U.S. at 384, 388; *Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1433 (7th Cir. 1996); *Lyn-Lea Travel Corp.*, 283 F.3d at 286–87). Plaintiffs do not—and cannot—explain how these cases suggest any error in the district court's statement that Plaintiffs' claims would be preempted against an airline defendant or any other flaw in the district court's analysis. There is none.

The district court's holding was correct: "Plaintiffs seek damages relating to the receipt of airline services," so "the ADA preempts [their] state-law claims against CrowdStrike, as a cybersecurity firm whose functions at issue here relate to airline services." ROA.558–59.

## B. Alternatively, the ADA Preempts Plaintiffs' Claims Because They Would Have a Significant Effect on Prices and Services.

Plaintiffs' claims are also preempted by the ADA because they would have significant effects on airline services and prices. Plaintiffs' claims seek to regulate airlines' use of cybersecurity services and thereby affect airline services, and by exposing airlines' vendors to liability for airline service disruptions, they would affect prices.

Contrary to Plaintiffs' suggestion, however, such effects are ***not*** a pre-requisite for ADA preemption. Assessing whether claims have any

35

"forbidden significant effect" is an alternate test that this Court need not consider if it concludes that Plaintiffs' claims have a "connection with or reference to" airline services for the reasons discussed in Part A, *supra*.

### 1.    The Significant-Effects Analysis Is an Alternate Route to Preemption—Not a Pre-requisite.

Plaintiffs argue that "[e]ven if" their claims can "be construed as relating to an airline service," they are not preempted unless they are also shown to have a "forbidden significant effect" on those services. Br. 23. But as the district court properly recognized, the preemption test is disjunctive—not conjunctive. *See* ROA.559 (concluding that Plaintiffs' claims were "also" preempted because of forbidden significant effects). This Court has stated this in clear terms: "A law 'relate[s] to' price under the ADA so long as it has a 'connection with or reference to' price **or** presents a 'significant effect' on the price of air services." *Air Evac EMS*, 8 F.4th at 351 (emphasis added) (quoting *Morales*, 504 U.S. at 384, 388).

This Court's use of a disjunctive test derives from the Supreme Court's reasoning in *Morales*. There, in finding preemption under the ADA, the Supreme Court first concluded that state advertising guidelines at issue expressly referenced airfares. 504 U.S. at 388. Then, the Supreme Court noted that "***[i]n any event**, beyond the guidelines'*

express reference to fares, it is clear as an economic matter that state restrictions on fare advertising have the forbidden significant effect upon fares." *Id.* (emphasis added).

Following this reasoning, this Court and others have recognized that a claim is preempted if it ***either*** expressly references prices, routes, or services ***or*** would have a forbidden effect on prices, routes, or services. *See, e.g.*, *EagleMed LLC v. Cox*, 868 F.3d 893, 902 (10th Cir. 2017) ("As this and other cases make clear, however, the court only needs to decide whether a particular state law or claim has a 'forbidden significant economic effect on airline rates, routes, or services' when the state law at issue does not 'expressly refer to airline rates, routes or services' itself." (quotation omitted)).

While Plaintiffs insist that the standard is conjunctive, they cite cases from this Court and other circuits describing the test as disjunctive. *See*, *e.g.*, Br. 16 (citing *Air Evac EMS*, 8 F.4th at 351). Plaintiffs even quote a Seventh Circuit decision's statement that a law "'relates to' airline rates, routes, or services, ***either*** by expressly referring to them ***or*** by having a significant economic effect upon them." Br. 40 (emphasis added) (quoting *Travel All Over the World*, 73 F.3d at 1432).

Plaintiffs attempt to justify their position by invoking the Supreme Court's decision in *Rowe v. New Hampshire Motor Transportation Ass'n*, 552 U.S. 364, 375 (2008). But *Rowe* never held that the test is conjunctive; it simply concluded that both parts of the test were met, just like *Morales*. *See Rowe*, 552 U.S. at 367. The language Plaintiffs cite states only that a state law's "'effect' is 'forbidden' under federal law" if it has a "'*significant* impact' on carrier rates, routes, or services." *Id.* at 375 (emphasis in original) (quoting *Morales*, 504 U.S. at 390). But even if the state law's **effect** is not forbidden, it may be preempted because it has a "connection or reference" to prices, routes, or services that is not "'too tenuous, remote, or peripheral.'" *Onoh*, 613 F.3d at 599 (quoting *Morales*, 504 U.S. at 384, 390).

That *Rowe* did not disturb the disjunctive test established in *Morales* is clear from the Supreme Court's subsequent ruling in *Ginsberg*. Six years after *Rowe*, the Supreme Court held in *Ginsberg* that a state-law claim was preempted without ever considering whether a "forbidden significant effect" existed. 572 U.S. at 289. The Supreme Court could not have done so if the "forbidden significant effect" analysis were required,

rather than simply an alternate path to preemption.[7] This Court has done the same. *See Montgomery v. Delta Air Lines, Inc.*, No. 22-10692, 2023 WL 2400743, at *4–5 (5th Cir. Mar. 8, 2023) (per curiam) (affirming based on only one ground).

Accordingly, this Court may affirm the district court's ruling on the ground that Plaintiffs' claims expressly reference or connect to airline flights, as discussed above. Or, alternatively, this Court may affirm because Plaintiffs' claims would have significant economic effects on airline prices or services, as discussed below.

## 2. The District Court Correctly Concluded that Plaintiffs' Claims Would Have Forbidden Significant Effects.

Turning to the alternative "significant effects" test, the district court correctly concluded that "Plaintiffs' claims are also preempted because they would affect airline regulation and have a 'significant effect' on airline services." ROA.559, ROA.561 (recognizing that Plaintiffs' claims, related to the "computer systems and cybersecurity procedures of

---

[7] Other decisions after *Morales* have likewise treated the test as disjunctive. *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 227–28 (1995) (holding that claims under the Illinois Consumer Frauds Act related to airline fares and were thus preempted without discussing whether the state law would have a forbidden significant effect).

airlines," "would have an impact on future service operations"). The court also recognized the likelihood of "an economic effect on airlines." ROA.560. As discussed below, this alternate basis for finding Plaintiffs' claims preempted may be affirmed based on either the effect on services or prices.

### a. Plaintiffs' claims would have a significant effect on airline services.

The district court correctly concluded that Plaintiffs' claims would have a significant effect on airline services. ROA.559–60. Through state-law claims, Plaintiffs seek to regulate the cybersecurity systems that airlines rely on to offer flights to customers. *Cf.* ROA.350 (Compl. ¶ 155) (acknowledging effects on "many separate" airline systems). As the district court put it: "Plaintiffs acknowledge their suit could change cybersecurity protocols in airline service or at least is intended to do so." ROA.562.

The district court reasoned that if cybersecurity providers were subject to "nationwide damages related to air travel disruption," they would alter their services and raise prices, and that this would have a "significant effect on airline services," as well as "an economic effect on airlines." ROA.559–60.

Plaintiffs challenge the district court's analysis on the grounds that it is "speculative" and based on "implausible inferences." Br. 31–32. Those challenges fail.

The district court's logical approach finds support in the case law. Multiple circuits have "rejected the contention that empirical evidence is necessary to warrant FAAAA [or, here, ADA] preemption, and allowed courts to 'look[ ] to the logical effect that a particular scheme has on the delivery of services or the setting of rates.'" *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 21 (1st Cir. 2014) (alteration in original) (quotation omitted); *Costello v. Beavex, Inc.*, 810 F.3d 1045, 1054 (7th Cir. 2016) ("Empirical evidence is not mandatory for this court to conclude that the [state law] is preempted." (citing *Rowe*, 552 U.S. at 373–74)).

The correctness of the court's logical reasoning regarding the implications for prices is discussed below. But Plaintiffs' argument about a purported "chain of implausible inferences" (Br. 32) takes issue only with the potential effect on prices and does not address the anticipated effect on services. This ignores the district court's primary reasoning— that allowing state tort law claims, like Plaintiffs', to regulate airlines'

cybersecurity would affect airline services. ROA.560 (recognizing that it would "incentiv[ize]" changes).

Plaintiffs' claims resemble those that other courts of appeals have deemed to have significant effects on services. One of the cases Plaintiffs cite—*Tobin v. Fed. Express Corp.*, 775 F.3d 448 (1st Cir. 2014)—is illustrative. There, the First Circuit held that Tobin's common-law claims that Federal Express had negligently delivered a package to the wrong address were preempted. *Id.* at 449. The court explained that a finding of negligence "would effectively supplant market forces with Massachusetts common-law definitions of reasonableness and, thus, create the very patchwork of state-based regulations that ADA preemption is meant to preclude." *Id.* at 455. This would "produce a significant forbidden effect." *Id.* The court went on to reject Tobin's argument that "garden-variety tort claims . . . enforcing nothing more than a duty of care that exists throughout society" cannot have a "forbidden effect." *Id.* Because the negligence claims addressed "protocols for package labeling, verification, and delivery," they "would regulate how FedEx operates its core business." *Id.* at 456.

So too here. Plaintiffs' claims address cybersecurity software as used to provide flight services across the country. *See* ROA.346, 357. (Compl. ¶¶ 142–43, 178) (alleging airlines "rely heavily on cyber and network support to operate [ ] essential systems"). "[U]sing state common law as a blunt instrument to prescribe" standards for airline cybersecurity would affect how airlines run their systems to provide flights to customers. *Tobin*, 775 F.3d at 456; *cf.* 89 Fed. Reg. 28,569 (Apr. 19, 2024) (referencing federal airline cybersecurity standards).

### b. Plaintiffs' claims would have a significant effect on airline prices.

Even considering only their effect on airline prices, Plaintiffs' claims would have a significant effect. Plaintiffs' preemption theory, if accepted, would open the door to expansive liability, not just for cybersecurity providers like CrowdStrike but also for other airline vendors providing products or services integral to the provision of flights. These companies could face liability not just for the cost of the flights but, as Plaintiffs seek to recover here, a host of personal expenses, medical bills, and other costs allegedly stemming from the affected flights. The threat of this liability would force the companies to either seek indemnification from the airlines or to significantly raise the prices they

43

charge airlines. In either scenario, there would be significant effects on airline prices. *See* ROA.560 (acknowledging the implications for prices).

Congress recognized the need to manage liability for flight delays and cancellations when it created an exclusive, limited federal remedial scheme. 49 U.S.C. § 42305 (addressing refunds for delayed or canceled flights); *see* 14 C.F.R § 260.6 (same). Permitting liability here is contrary to what Congress intended when it sought to prevent state laws (statute or common law) from regulating airlines and affecting prices.

Plaintiffs' discussion of "forbidden significant effect[s]" cites *Day v. SkyWest Airlines*, 45 F.4th 1181 (10th Cir. 2022), an inapposite personal-injury suit by a passenger struck by a beverage cart during a flight. Br. 34. The Tenth Circuit found no preemption because it was a personal-injury claim resulting from the "operation or maintenance of the aircraft," *id.* at 1187 (quotation omitted)—a distinct category of claims not covered by the ADA preemption provision, as discussed below, *see infra* Part C.1. The Court emphasized the "lack of a federal remedy" for the plaintiff's injury. *Day*, 45 F.4th at 1187. The Tenth Circuit further concluded that a finding of "liab[ility] for [the airline's] allegedly negligent infliction of personal injuries . . . during its beverage service

would not force [the airline] to remove, add, or modify any of its prices, routes, or services." *Id.* at 1188–89. This case, by contrast, falls outside any personal-injury exception, *see infra* Part C.1, and, as noted, federal law regulates the remedies for delayed or canceled flights and related services*, see* 49 U.S.C. § 42305; 14 C.F.R Part 260. Moreover, because Plaintiffs' state claims concern airline cybersecurity, a necessary and significant component in the provision of flights, they would affect both airline services and prices.

## C.    Plaintiffs Do Not Avoid Preemption by Alleging Personal-Injury or Products-Liability Claims.

In a bid to salvage their case, Plaintiffs argue that their claims cannot be preempted because they are really personal-injury and products-liability claims, which Plaintiffs contend cannot be "related to" airline services. Br. 26–27, 30–31. Plaintiffs made only the personal-injury argument in the district court; they did not raise the products-liability challenge until their appeal. In any event, both arguments are meritless.

### 1.    Plaintiffs' Personal-Injury Claims Are Preempted Because They Were Not Caused by the Faulty Operation or Maintenance of Aircraft.

Plaintiffs argue that their claims cannot be preempted to the extent

that they allege personal injuries. But the district court correctly rejected this argument, explaining that Plaintiffs overread this Court's narrow exception for certain personal-injury claims. ROA.560–61 (recognizing that personal injuries "inflicted by airplane operations," such as the "way a plane is flown" and "airplane crashes," do not relate to airline services).

Plaintiffs invoke this Court's decision in *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334 (5th Cir. 1995) (en banc). Br. 25, 27–28. But that decision is no help to them; to the contrary, its reasoning confirms that Plaintiffs' claims are preempted. In *Hodges*, bottles of rum fell from an overhead compartment and cut an airline passenger. 44 F.3d at 335. The passenger alleged that the airline was responsible for negligently overpacking the overhead compartment. This Court observed that "Congress did not . . . intend . . . to preempt ***all*** state claims for personal injury," *id.* at 338 (emphasis added), and concluded that the passenger's claims for his injuries were not preempted because "federal preemption of state laws, even certain common law actions 'related to services' of an air carrier, does not displace state tort actions for personal physical injuries or property damage ***caused by the operation and maintenance of aircraft***," *id.* at 336 (emphasis added); *see id.* at 338

(describing the airlines' operation of the overhead luggage racks as the operation of a "device[ ] . . . available to support the general purpose of navigation").

The *en banc* Court in *Hodges* cautioned, however, that "this general vindication of state claims arising from the maintenance or operation of aircraft ***does not*** extend to all conceivable state tort claims." *Id.* at 339 (emphasis in original). *Hodges* based its limited exception on another statutory provision requiring air carriers to "maintain insurance or self-insurance" for bodily injuries or property damage "resulting from the operation or maintenance of aircraft." *Id.* at 338 (quoting 49 U.S.C. App. § 1371(q) (recodified as 49 U.S.C. § 41112(a)) (stressing "the importance" of this provision because it "can only be understood to qualify the 'scope'" subject to preemption). The Court held only that "[t]he 'services' that the state may not regulate . . . are distinct from the 'operation and maintenance of aircraft,' and all claims related to 'services' are preempted." *Id.* at 338–39.

As the district court correctly found, here, Plaintiffs' claims— including their alleged personal injuries—do not involve the "operation and maintenance of aircraft." *Hodges*, 44 F.3d at 338–39; ROA.560–61.

Rather, Plaintiffs allege their personal injuries were the consequence of flight delays or cancellations flights. *See* ROA.316 (Compl. ¶¶ 14–15) (Plaintiff del Rio: back and neck pain "as a result of" having to sleep on airport benches due to a flight delay), ROA.318 (Compl. ¶ 24) (Plaintiff Murphy: interruption of "sleep schedule" due to flight disruption "caused him to suffer a migraine"), ROA.323 (Compl. ¶ 57) (Plaintiff Aguayo: Outage's "impact on her travel" created "stress," which caused "anxiety, chest pains, and headaches").[8]

Plaintiffs' injuries resulting from delays and cancellations due to the CrowdStrike Outage's alleged impact on flight schedules are a far cry from a personal injury suffered aboard a plane resulting from the "operation or maintenance" of the aircraft. The district court correctly concluded that Plaintiffs' claims do not fall within that personal-injury exception; they are related to airlines services and are thus preempted.

---

[8] Plaintiffs' reliance on an earlier district court case, *Butcher v. City of Houston*, 813 F. Supp. 515, 517 (S.D. Tex. 1993), is similarly misplaced. That case, which permitted a slip-and-fail claim alleging negligent maintenance of the floors of an airport terminal building, is inapposite. Building maintenance was easily distinguished from airline services, such as flights, ticketing, and baggage services. Unlike flight delay/cancellation remedies and airline cybersecurity, maintenance of terminal floors is not an area of federal regulation.

In arguing against this result, Plaintiffs also rely on *Charas v. Trans World Airlines*, 160 F.3d 1259 (9th Cir. 1998) (en banc). *See* Br. 26, 29. That Ninth Circuit ruling was limited to interpreting the word "service" in Section 41713(b)(1). 160 F.3d at 1261. The court construed the term narrowly, and other circuits have declined to follow *Charas* because it is inconsistent with subsequent Supreme Court precedent. *See Bower v. EgyptAir Airlines Co.*, 731 F.3d 85, 94 (1st Cir. 2013); *Air Transp. Ass'n of Am., Inc. v. Cuomo*, 520 F.3d 218, 223 (2d Cir. 2008) (per curiam). They have instead followed the broader definition of services adopted by this Court in *Hodges*, 44 F.3d at 336–38. *See Bower*, 731 F.3d at 94 (citing approvingly the definition of services in *Hodges*); *see also Cuomo*, 520 F.3d at 223 (collecting circuit cases following *Hodges*).

## 2. Products-Liability Claims Are Not Categorically Excepted from Preemption.

Plaintiffs fare no better when they assert that the ADA does not preempt "product liability claims . . . ***where those claims do not relate to airline rates, routes, or services***." Br. 30 (emphasis added). It is undisputed that the ADA's preemption provision applies only to claims "related to a price, route, or service of an air carrier," 49 U.S.C. § 41713(b)(1), and thus claims (including product-liability claims) that

49

"do not relate to airlines rates, routes, or services" are not preempted. Br. 30.

Plaintiffs' assertion merely raises the central question of whether their claims "relate[ ] to a price, route, or service." 49 U.S.C. § 41713(b)(1). As discussed *supra*, Plaintiffs' claims are related to airline services, so Plaintiffs' description of them as products-liability claims is irrelevant.

To the extent Plaintiffs suggest that courts treat products-liability claims differently for the purpose of ADA preemption analysis, their argument is both forfeited and meritless. Plaintiffs never argued for a products-liability exception to ADA preemption before the district court; they argued only for a personal-injury exception. And because Plaintiffs never afforded the district court an opportunity to address this argument, it cannot serve as a basis for appeal. *See Rittinger v. Healthy All. Life Ins.*, 914 F.3d 952, 955 (5th Cir. 2019) (per curiam) (holding that a plaintiff had forfeited an argument on appeal when it was not raised in the district court).

In any event, Plaintiffs are mistaken. The two cases they cite do not support any special treatment for products-liability claims under 49

U.S.C. § 41713(b)(1). Both cases—Eleventh Circuit and Tenth Circuit decisions from 1993—concerned implied preemption, ***not*** the express preemption at issue here. *See Pub. Health Tr. of Dade Cnty, Fla. v. Lake Aircraft, Inc.*, 992 F.2d 291, 294 (11th Cir. 1993) ("The district court ruled that [appellant's] claims were impliedly pre-empted by federal regulations."); *Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1443–44 (10th Cir. 1993) ("Piper does not maintain that Cleveland's claims are expressly preempted."). Because no one argued for express preemption in either case, the courts simply assumed that the specific product-liability claims before them—in both cases defects causing plane crashes—were ***not*** expressly preempted because they were "***unrelated*** to airline rates, routes, or services." *Pub. Health Tr.*, 992 F.2d at 295 (emphasis added); *Cleveland*, 985 F.2d at 1444 n.13 (accepting the parties' agreement that the safety-related claims did not relate to airline prices, routes, and services). In short, neither court gave the product-liability claims special treatment, and neither decision suggests that an alleged product defect causing flight cancellations (as opposed to a plane crash) would escape preemption.

Furthermore, Plaintiffs fail to mention that the preemption

analysis in these two out-of-circuit cases has been undermined by intervening Supreme Court decisions. The Tenth Circuit has recognized that *Cleveland*'s preemption analysis has been "called into question" by "subsequent Supreme Court opinions." *US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326 (10th Cir. 2010). The Eleventh Circuit's decision in *Public Health Trust* relies on the same reasoning and is similarly undermined. 992 F.2d at 294–95.

In sum, Plaintiffs' claims—whether or not they are characterized as products-liability claims—do not warrant special treatment for purposes of the preemption analysis. As the district court concluded, because Plaintiffs' claims all relate to airlines services, they are all preempted under the ADA.

## CONCLUSION

For the foregoing reasons, the judgment of the district court granting Defendants-Appellees' motion to dismiss should be affirmed.

52

Dated: October 31, 2025

Respectfully submitted,

**DLA PIPER LLP (US)**

*/s/ Samantha L. Chaifetz*
Samantha L. Chaifetz
Sergio Filipe Zanutta Valente
500 Eighth Street, NW
Washington, DC 20004
Tel:  202-799-4000

Isabelle Ord
Kylie Green
555 Mission Street
San Francisco, CA 94015
Tel:  415-836-2500

Andrew Serwin
4365 Executive Drive, Suite 1100
San Diego, CA 92121
Tel: 858-677-1418

Jeffrey DeGroot
701 Fifth Avenue, Suite 6900
Seattle, WA 98104
Tel:  206-839-4800

**ALEXANDER DUBOSE &
JEFFERSON LLP**

Marcy Hogan Greer
100 Congress Ave., Suite #1450
Austin, TX 78701
Tel:  512-482-9300

*Counsel for Defendants-Appellees
CrowdStrike, Inc. and
CrowdStrike Holdings, Inc.*

## CERTIFICATE OF SERVICE

I certify that on October 31, 2025, the foregoing document was filed with the Court and served upon all counsel of record via the Court's CM/ECF Document Filing System, in compliance with Fed. R. App. P. 25.

/s/   *Samantha L. Chaifetz*
*Counsel for Defendants-Appellees*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(g)(1), the undersigned counsel certifies that:

1.    This document complies with the word limits of Fed. R. App. P. 32(a)(7)(B), because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,972 words; and

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word Office Professional Plus 2010 in 14-point Century Schoolbook.


*/s/   Samantha L. Chaifetz*
*Counsel for Defendants-Appellees*

Dated: October 31, 2025