# No. 25-50518

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Julio Del Rio, individually and on behalf of all others similarly situated; Jack Murphy, individually and on behalf of all others similarly situated; Steven Bixby, individually and on behalf of all others similarly situated; Christopher Harlan; Sara Harlan; Philip Kirby; Jennie Aguayo; Alicia Kirby,

Plaintiffs – Appellants

v.

CrowdStrike, Incorporated; CrowdStrike Holdings, Incorporated,

Defendants – Appellees

*On Appeal from the United States District Court for the Western District of Texas, Austin Division, No. 1:24-cv-00881-RP, Hon. Robert Pitman*

## REPLY BRIEF OF APPELLANTS

Ben Barnow
BARNOW AND ASSOCIATES, P.C.
205 West Randolph Street, Suite 1630
Chicago, Illinois 60606
Tel: 312.621.2000

Cory S. Fein
CORY FEIN LAW FIRM
13105 Northwest Fwy., Suite 705
Houston, Texas 77040
Tel: 713.730.5001

Robert K. Shelquist
CUNEO GILBERT & LADUCA, LLP
5775 Wayzata Blvd., Suite 620
St. Louis Park, MN 55416
Tel: 612.254.7288

## TABLE OF CONTENTS

Table of Contents ........................................................................................... i

Table of Authorities ....................................................................................... ii

Introduction ....................................................................................................1

Argument.........................................................................................................2

   I.   CrowdStrike Asserts an Erroneous Disjunctive Test .....................................2

      A.   Courts Must Evaluate a Claim's Potential Significant Effects ................2

      B.   CrowdStrike Forfeited its Disjunctive Test Argument ...........................6

  II.  The ADA Does Not Preempt Plaintiffs' Claims ...........................................7

      A.   Plaintiffs' Claims Are Not Sufficiently Related to Airline Services ........8

      B.   Plaintiffs' Claims Lack Any Forbidden Significant Effect ...................15

      C.   The ADA Does Not Preempt Plaintiffs' Personal Injury and Product Liability Claims ........................................................................20

  III. The District Court's Reliance on Facts Not Before the Court Was Reversible Error........................................................................................25

Conclusion ....................................................................................................27

Certificate of Service ....................................................................................29

Certificate of Compliance .............................................................................29

TABLE OF AUTHORITIES

## Cases

*Air Evac EMS, Inc. v. Sullivan*,
 8 F.4th 346 (5th Cir. 2021) ..............................................................5, 6

*Air Transp. Ass'n of Am. v. City & Cnty. of S.F.*,
 266 F.3d 1064 (9th Cir. 2001) .................................................... 16, 20

*Am. Airlines v. Wolens*,
 513 U.S. 219 (1995).........................................................................3

*Bower v. EgyptAir Airlines Co.*,
 731 F.3d 85 (1st Cir. 2013)..................................................... passim

*Branche v. Airtran Airways, Inc.*,
 342 F.3d 1248 (11th Cir. 2003) .........................................................21

*Brown v. United Airlines, Inc.*,
 720 F.3d 60 (1st Cir. 2013)...............................................................4

*Charas v. Trans World Airlines, Inc.*,
 160 F.3d 1259 (9th Cir. 1998) ................................................ 5, 22, 23

*Cleveland v. Piper Aircraft Corp.*,
 985 F.2d 1438 (10th Cir. 1993) .........................................................24

*Codoni v. Port of Seattle*, No. 2:23-cv-795-JNW,
 2024 U.S. Dist. LEXIS 214318 (W.D. Wash. Nov. 25, 2024)...........................9

*Conservation Force v. Delta Air Lines, Inc.*,
 190 F. Supp. 3d 606 (N.D. Tex. 2016) .............................................26

*Costello v. BeavEx, Inc.*,
 810 F.3d 1045 (7th Cir. 2016) .........................................................19

*Day v. Skywest Airlines*,
 45 F.4th 1181 (10th Cir. 2022) ................................................ 10, 18, 22

*Delta Air Lines, Inc. v. CrowdStrike, Inc.*, No. 24CV013621,
 2025 Ga. Super. LEXIS 864 (Ga. Super. Ct. May 16, 2025)...........................17

*Dilts v. Penske Logistics, LLC*,
  769 F.3d 637 (9th Cir. 2014) ........................................................ 15, 19

*Duncan v. Nw. Airlines, Inc.*,
  208 F.3d 1112 (9th Cir. 2000) ...........................................................16

*Elam v. Kan. City S. Ry.*,
  635 F.3d 796 (5th Cir. 2011) ..............................................................19

*Emmett v. Delta Air Lines, Inc.*, No. 2:22-1568,
  2024 U.S. Dist. LEXIS 97812 (W.D. Pa. June 3, 2024) ....................14

*FDIC v. Mijalis*,
  15 F.3d 1314 (5th Cir. 1994) ................................................................7

*Gordon v. Amadeus IT Grp., S.A.*,
  194 F. Supp. 3d 236 (S.D.N.Y. 2016) ............................. 14, 15, 20, 27

*Gregory v. Mo. Pac. R.R.*,
  32 F.3d 160 (5th Cir. 1994) ..................................................................7

*Hodges v. Delta Airlines, Inc.*,
  44 F.3d 334 (5th Cir. 1995) ........................................................ passim

*In re Am. Airlines, Inc., Privacy Litig.*,
  370 F. Supp. 2d 552 (N.D. Tex. 2005) ........................................ 13, 15

*Lewis v. Cont'l Airlines, Inc.*,
  40 F. Supp. 2d 406 (S.D. Tex. 1999)...................................................26

*Lupian v. Joseph Cory Holdings LLC*,
  905 F.3d 127 (3d Cir. 2018) ...............................................................19

*Lyn-Lea Travel Corp. v. Am. Airlines*,
  283 F.3d 282 (5th Cir. 2002) ..............................................................12

*Martin v. Midwest Express Holdings, Inc.*,
  555 F.3d 806 (9th Cir. 2009) ..............................................................25

*Miller v. C.H. Robinson Worldwide, Inc.*,
  976 F.3d 1016 (9th Cir. 2020) ..............................................................8

*Montalvo v. Spirit Airlines*,
508 F.3d 464 (9th Cir. 2007) ..........................................................4, 19

*Morales v. Trans World Airlines, Inc.*,
504 U.S. 374 (1992) ................................................................ passim

*Nw., Inc. v. Ginsberg*,
572 U.S. 273 (2014) .......................................................... 4, 5, 9, 10

*Onoh v. Nw. Airlines, Inc.*,
613 F.3d 596 (5th Cir. 2010) ...........................................................2

*Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (Ex),
2019 U.S. Dist. LEXIS 65985 (C.D. Cal. Feb. 14, 2019) .............. 13, 15, 20, 27

*Pub. Health Tr. v. Lake Aircraft, Inc.*,
992 F.2d 291 (11th Cir. 1993) ........................................................24

*Rice v. Norman Williams Co.*,
458 U.S. 654 (1982) ....................................................................26

*Rollins v. Home Depot USA, Inc.*,
8 F.4th 393 (5th Cir. 2021) ..............................................................6

*Rowe v. N.H. Motor Transp. Ass'n*,
552 U.S. 364 (2008) ..................................................................3, 17

*Sikkelee v. Precision Airmotive Corp.*,
822 F.3d 680 (3d Cir. 2016) ...........................................................25

*Smith v. Comair, Inc.*,
134 F.3d 254 (4th Cir. 1998) ..................................................... 13, 26

*Sw. Airlines Co. v. City of San Antonio*, No. SA-24-CV-01085-XR,
2025 U.S. Dist. LEXIS 168973 (W.D. Tex. Aug. 29, 2025)............................11

*Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*,
164 F.3d 186 (3d Cir. 1998) ................................................. 3, 4, 20, 21

*Templeton v. Jarmillo*,
28 F.4th 618 (5th Cir. 2022) .............................................................6

*Tobin v. AMR Corp.*,
    637 F. Supp. 2d 406 (N.D. Tex. 2009) ................................................................12

*Tobin v. Fed. Express Corp.*,
    775 F.3d 448 (1st Cir. 2014).................................................... 4, 17, 26

*Torres v. Precision Indus.*,
    938 F.3d 752 (6th Cir. 2019) ................................................................26

*Travel All Over the World v. Kingdom of Saudi Arabia*,
    73 F.3d 1423 (7th Cir. 1996) .................................................... 9, 19, 26

*US Airways, Inc. v. O'Donnell*,
    627 F.3d 1318 (10th Cir. 2010) ..........................................................25

*Watson v. Air Methods Corp.*,
    870 F.3d 812 (8th Cir. 2017) ............................................. 4, 5, 18, 20

## INTRODUCTION

Defendants-Appellees CrowdStrike, Inc. and CrowdStrike Holdings, Inc. (together, "CrowdStrike") ask the Court to affirm the District Court's expansive preemption ruling based on an argument directly contrary to its position below, an overbroad reading of the Airline Deregulation Act ("ADA"), and mischaracterizations of Plaintiffs' claims and the District Court's holding.

On appeal, CrowdStrike asserts for the first time a novel "disjunctive" ADA services preemption test under which a claim's "significant effect" is sufficient to give rise to preemption without regard for the claim's connection to airline price, routes, or services. But CrowdStrike forfeited this argument by not raising it in the District Court, where it took a directly contradictory position that significant effects are irrelevant to the ADA preemption analysis. Further, courts must always consider the potential significant effects of a claim where, as here, a plaintiff asserts state common law claims based on generally applicable duties of care.

Regardless of the test applied, Plaintiffs' claims are not preempted. The claims do not relate to airline services within the meaning of the ADA because they arise from CrowdStrike's negligent software development practices prior to the CrowdStrike Outage, not aspects of the airline-passenger relationship. Nor do the claims have the requisite forbidden significant effects as they do not act upon airline prices or services and would not regulate airlines or impose any obligations on the

manner in which airlines operate their business. The District Court's contrary conclusion that this litigation would significantly affect airline prices and services through a speculative chain of events disregards allegations in Plaintiffs' Complaint and is unsupported by the record.

ARGUMENT

## I.    CrowdStrike Asserts an Erroneous Disjunctive Test

### A.    Courts Must Evaluate a Claim's Potential Significant Effects

In its Brief, CrowdStrike asserts a "disjunctive" test under which preemption occurs in two independent scenarios: when (a) a claim has a connection with or reference to airline services, *or* (b) a claim has a forbidden significant effect on airline services (the "disjunctive test"). Def. Br., at 35–39. CrowdStrike's novel disjunctive test is incorrect; the correct test requires that a claim have a connection with or reference to airline services *and* have a forbidden significant effect on airline services to be preempted (the "conjunctive test"). *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 388, 390 (1992).

CrowdStrike asserts the "only requirement" for preemption is that a claim's connection to services is not too tenuous, remote, or peripheral. Def. Br., at 23 (citing *Onoh v. Nw. Airlines, Inc.*, 613 F.3d 596, 599 (5th Cir. 2010)). What CrowdStrike fails to acknowledge is that the non-tenuous connection requirement is the same as the forbidden significant effects requirement. A claim will either have a forbidden significant effect and be preempted, or its connection will be too tenuous, remote, or

2

peripheral to have the forbidden significant effect and will not be preempted. *E.g.*, *Taj Mahal Travel, Inc. v. Delta Airlines, Inc.*, 164 F.3d 186, 194 (3d Cir. 1998) ("When state law does not have a regulatory effect, it is 'too tenuous, remote, or peripheral' to be preempted."); *accord Bower v. EgyptAir Airlines Co.*, 731 F.3d 85, 96 (1st Cir. 2013). Thus, courts must always consider a claim's potential significant effects to determine whether the claim is too tenuously connected to prices, routes, or services, and the conjunctive test is the correct approach.

The Supreme Court's decision in *Rowe v. New Hampshire Motor Transportation Association*, 552 U.S. 364 (2008), forecloses CrowdStrike's disjunctive test here. There, the Supreme Court explained that under *Morales* "federal law does not pre-empt state laws that affect rates, routes, or services in 'too tenuous, remote, or peripheral a manner'" and "the state laws whose 'effect' is 'forbidden' under federal law are those with a '*significant* impact' on [airline] rates, routes, or services." *Id.* at 375 (emphasis in original); *Am. Airlines v. Wolens*, 513 U.S. 219, 224 (1995) ("*Morales* emphasized that the challenged guidelines . . . 'imposed [obligations that] would have a significant impact upon . . . the fares [airlines] charge.'" (alterations in original)). Courts disagree with CrowdStrike's rejection of *Rowe*'s analysis, finding "*Rowe* shows that non-economic laws that nonetheless have a significant regulatory effect on the airlines are preempted." *Bower*, 731 F.3d at 96.

3

In *Northwest, Inc. v. Ginsberg*, the Supreme Court held state common law rules "fall comfortably within" the scope of the ADA's preemption provision. 572 U.S. 273, 281 (2014). Despite its lack of an express reference to state common law, the ADA can preempt state common law claims because "[w]hat is important . . . is the effect of a state law, regulation, or provision, not its form." *Id.* at 283. The Court explained it "defies logic to think that Congress would disregard real-world consequences and give dispositive effect to the form of a clear intrusion into a federally regulated industry." *Id.* at 284 (quoting *Brown v. United Airlines, Inc.*, 720 F.3d 60, 66–67 (1st Cir. 2013)). This language evidences that assessing a claim's potential significant effects is essential, yet CrowdStrike fails to address it.

Other Circuits recognize that "ADA express pre-emption applies only when there is a 'significant' impact on service." *Watson v. Air Methods Corp.*, 870 F.3d 812, 819 (8th Cir. 2017) (*en banc*); *accord Montalvo v. Spirit Airlines*, 508 F.3d 464, 475 (9th Cir. 2007) (Explaining the Ninth Circuit has held significant effects are "a prerequisite for finding preemption" and "[t]he Supreme Court has instructed that only those state laws that have a significant effect" are preempted. (citing *Morales*, 504 U.S. at 384)). These courts agree *Morales* requires "an individualized assessment of the facts underlying each case to determine whether a particular state-law claim will have a forbidden effect." *Tobin v. Fed. Express Corp.*, 775 F.3d 448, 456 (1st Cir. 2014); *see Taj Mahal Travel*, 164 F.3d at 194 ("the proper inquiry is

whether a common law tort remedy frustrates deregulation by interfering with competition through public utility-style regulation").

This Court has also recognized that "[l]aws of general applicability . . . are preempted if they have the 'forbidden significant effect' on rates, routes or services." *Hodges v. Delta Airlines, Inc.*, 44 F.3d 334, 336 (5th Cir. 1995) (*en banc*) (quoting *Morales*, 504 U.S. at 388); *see also id.* at 339 (recognizing *Morales*'s holding relied on challenged regulations' significant effects). Plaintiffs' claims assert generally applicable state-law duties of care, Pls. Br., at 32–33, and are thus analogous to laws of general applicability. *See Ginsberg*, 572 U.S. at 284. Plaintiffs' claims are therefore preempted only if they have the forbidden significant effect on airline services. *Hodges*, 44 F.3d at 336; *Watson*, 870 F.3d at 819; *Charas v. Trans World Airlines, Inc.*, 160 F.3d 1259, 1265 (9th Cir. 1998) (*en banc*) (ADA does not preempt state tort law remedies that "do not significantly impact federal deregulation").

CrowdStrike claims *Air Evac EMS, Inc. v. Sullivan*, 8 F.4th 346 (5th Cir. 2021), "stated in clear terms" that the ADA preemption test is disjunctive. Def. Br., at 36. However, *Air Evac* is inapposite because in that case the Court was evaluating whether the ADA preempted price caps on air ambulance reimbursements found in the Texas Workers' Compensation Act. *Id.* at 349. That case was limited to price-related preemption of state regulations and did not consider preemption of common law claims or airline services. This Court rejected the *Air Evac* appellants' reliance

on *Hodges* because its analysis of airline services was irrelevant to the price preemption analysis at issue. *Id.* at 351. Even assuming *arguendo* that *Air Evac* did hold that *Morales* created a disjunctive ADA *price* preemption test,[1] there is no suggestion in *Air Evac* that the same test applies to ADA *services* preemption of state common law tort claims arising from generally applicable duties of care.

As explained *infra*, Plaintiffs' claims do not have the requisite forbidden significant effect on airlines, and therefore preemption does not apply.

## B.    CrowdStrike Forfeited its Disjunctive Test Argument

CrowdStrike forfeited its argument for a disjunctive test by taking a contrary position below and failing to raise this argument before the District Court. A party "forfeits an argument by failing to raise it in the first instance before the district court—thus raising it for the first time on appeal." *Rollins v. Home Depot USA, Inc.*, 8 F.4th 393, 397 (5th Cir. 2021); *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) (party "must press and not merely intimate [an] argument" before the district court to preserve argument for appeal).

Below, CrowdStrike took the position that the significant effect requirement "is not the test." ROA.522. CrowdStrike argued that whether Plaintiffs are "'attempting to impose some separate economic duty on the airlines through state

---

[1] *Morales*, like *Air Evac*, considered preemption of state regulations for their relation to airline prices and did not consider airline services preemption or common law claims. *Morales*, 504 U.S. at 383, 387–89.

laws that would affect their services to customers' *is irrelevant to preemption*" because "[t]here is *no separate economic litmus test*." *Id.* (emphasis added). Now, CrowdStrike takes the position that not only should economic impact be considered, but that it is an alternative, stand-alone basis for preemption. Def. Br., at 35–39. This directly contradicts its argument below that "significant effects" are not a separate consideration because when claims relate to services they "*necessarily and inherently have a 'forbidden significant effect'* . . . and are preempted." ROA.522 (emphasis added).

CrowdStrike's position on appeal is irreconcilable with its position below and should be rejected as either forfeited or waived. *See Gregory v. Mo. Pac. R.R.*, 32 F.3d 160, 164–65 (5th Cir. 1994) (refusing to consider argument on appeal because an appellee "cannot take one position before the district court and then take an inconsistent position here"); *FDIC v. Mijalis*, 15 F.3d 1314, 1327 (5th Cir. 1994) ("If an argument is not raised to such a degree that the district court has an opportunity to rule on it, we will not address it on appeal.").

## II.    The ADA Does Not Preempt Plaintiffs' Claims

Regardless of whether the Court applies the conjunctive test or adopts a disjunctive test, Plaintiffs' claims are not preempted because they are not related to airline services to the degree the ADA requires and they will have no significant effect on any aspect of airlines' prices, routes, or services.

### A.    Plaintiffs' Claims Are Not Sufficiently Related to Airline Services

In *Hodges*, this Court explained that the ADA's preemption clause was "intended to prevent the states from regressing on economic deregulation by applying their own laws or rules concerning 'services.'" *Hodges*, 44 F.3d at 339. With that understanding, this Court defined airline services to include "the contractual arrangement between the airline and the user of the service" and matters "appurtenant and necessarily included with the contract of carriage between the passenger . . . and the airline." *Id.* at 336.

Plaintiffs' claims are premised on "CrowdStrike's negligent and reckless conduct" in developing and releasing a defective software update "that caused millions of computers around the world to repeatedly crash and become inoperable." ROA.314 ¶ 3. Importantly, CrowdStrike's underlying "negligent and reckless conduct" occurred entirely *before* the CrowdStrike Outage began and any airline clients were affected. ROA.333 ¶ 97, 334 ¶¶ 100, 102, 336 ¶ 109, 337 ¶ 112, 340 ¶ 121, 341 ¶ 124, 341-42 ¶¶ 125–26, 342-43 ¶ 129, 344 ¶ 136. Plaintiffs' claims relate to CrowdStrike's pre-Outage conduct in negligently developing, testing, and deploying defective software, not aspects of the contractual relationship between airlines and passengers. Plaintiffs do not "seek[] to hold [an airline] liable at the point at which it provides a 'service' to its customers." *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1024 (9th Cir. 2020); *see also* Pls. Br., at 22

(Plaintiffs "do not allege wrongful conduct on the part of any airline caused their injuries").

Unable to support its position with the facts before the Court, CrowdStrike surmises that "if the same alleged software issues had occurred" without affecting CrowdStrike's airline clients, Plaintiffs would not have sued CrowdStrike. Def. Br., at 22. This argument effectively concedes that Plaintiffs' claims ultimately hinge on the Outage itself (and CrowdStrike's role in causing it) rather than any "service" provided by an airline, and thus preemption is inappropriate. *See Codoni v. Port of Seattle*, No. 2:23-cv-795-JNW, 2024 U.S. Dist. LEXIS 214318, at *29 (W.D. Wash. Nov. 25, 2024) (holding claims not preempted despite allegations regarding airline routes and services because "it does not necessarily follow that Plaintiffs' claims [hinge] on preempted issues").

CrowdStrike's reliance on *Northwest, Inc. v. Ginsberg* is misplaced. The Supreme Court did not hold that a plaintiff's "reason for seeking" relief is determinative as to whether a claim relates to an airline price, route, or service, and the language CrowdStrike quotes is dicta. *Ginsberg*, 572 U.S. at 285. CrowdStrike cites no authority from this Court or any other interpreting this remark as *Ginsberg*'s holding or reducing the ADA preemption inquiry to such subjective guesswork. Def. Br., at 21–22; *cf. Travel All Over the World v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1434 (7th Cir. 1996) ("The subjective motivations of [airline]'s employees are

irrelevant to determining what constitutes 'services' within the meaning of the ADA.").

Even if such a consideration was determinative (it is not), this case is distinguishable because the *Ginsberg* plaintiff's "reason for seeking reinstatement of his membership" was to compel the airline to continue providing him "reduced rates and enhanced services." *Ginsberg*, 572 U.S. at 275. Plaintiffs here seek redress for CrowdStrike's past conduct in negligently failing "to properly develop, test, and deploy the Falcon update." ROA.315 ¶ 8; *see also* Pls. Br., at 34–36. Additionally, CrowdStrike's concession that the CrowdStrike Outage is the but-for cause of Plaintiffs' claims demonstrates CrowdStrike's challenged conduct is the ultimate reason for Plaintiffs' claims.

In its bid to sweep Plaintiffs' claims within the scope of the ADA, CrowdStrike misconstrues *Morales* as holding that any reference to an airline service in a pleading is a sufficient basis for the ADA to preempt a common law claim. *See* Def. Br., at 19. CrowdStrike is mistaken, and courts reject applying the ADA with the "uncritical literalism" for which CrowdStrike advocates here. *See Day v. Skywest Airlines*, 45 F.4th 1181, 1185 (10th Cir. 2022) (noting the Supreme Court has "warned against . . . an overly literal interpretation" of the phrase "related to" as otherwise "for all practical purposes pre-emption would never run its course"). Rather, "whether a [claim] has a 'reference to'" an airline service turns on whether

a claim "acts immediately and exclusively upon" airline services. *Sw. Airlines Co. v. City of San Antonio*, No. SA-24-CV-01085-XR, 2025 U.S. Dist. LEXIS 168973, at *51 (W.D. Tex. Aug. 29, 2025) (collecting cases). Plaintiffs' claims do not act immediately or exclusively on any aspect of the airline-passenger contractual relationship, so they are not preempted.

CrowdStrike's position is untenable as both the Supreme Court and this Court have made clear that claims relating to airline services "'may affect [airline services] in too tenuous, remote or peripheral a manner' to be preempted." *Hodges*, 44 F.3d at 336 (alteration in original) (quoting *Morales*, 504 U.S. at 390). Such a limitation on the ADA's preemptive reach would be unnecessary under CrowdStrike's approach. CrowdStrike's approach is also inconsistent with *Hodges* and other cases in which courts have held the ADA "does not displace state tort actions for personal physical injuries or property damage caused by" airlines' operations. *Hodges*, 44 F.3d at 336. In *Hodges*, the plaintiff alleged she sustained injuries "[d]uring a flight . . . when a fellow passenger opened an overhead compartment and dislodged a case containing several bottles of rum," yet this Court held the claim was not preempted because it was not derived from an airline service and would not "significantly affect [airline] services." *Id.* at 335, 340. If, as CrowdStrike contends, any reference to airline services compels preemption without regard for a claim's effect on airline services, the *Hodges* plaintiff's claim would have been preempted

simply because the plaintiff pled she was injured during a flight. *See Tobin v. AMR Corp.*, 637 F. Supp. 2d 406, 422 (N.D. Tex. 2009) ("The setting of the accident does not make the emergency care a 'service' under the [ADA].").

CrowdStrike cites snippets of Plaintiffs' Complaint describing airlines' use of its software as evidencing CrowdStrike's security software is a "core" aspect of airline services, Def. Br., at 27–28, 31–32, but *Hodges* clarifies that airline services implicate "the contractual arrangement between the airline and the user of the service." *Hodges*, 44 F.3d at 336. CrowdStrike is obviously not an airline and concedes it has no relationship with Plaintiffs. *See* Def. Br., at 22 n.3. The smattering of cybersecurity regulations CrowdStrike cites demonstrate only that the federal government views cybersecurity as a national security matter—clearly outside the ambit of the ADA's economic-centered deregulation. *See Lyn-Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 287 (5th Cir. 2002) ("ADA preemption is 'concerned solely with economic deregulation'"). Further, these regulations have no bearing on this case because they do not apply to CrowdStrike and because Plaintiffs' claims do not arise from or regulate airline cybersecurity practices.[2] ROA.354-67; Pls. Br., at 32–33.

---

[2] While CrowdStrike develops and licenses cybersecurity software, the CrowdStrike Outage was not the result of a cybersecurity incident. Rather, CrowdStrike's defective software update caused millions of Windows computers to crash and become inoperable, ROA.344-45 ¶ 137, including computers utilized in certain airlines' internal IT systems.

CrowdStrike criticizes Plaintiffs' analysis of cases finding claims against airlines vendors were preempted as an attempt "to impose a requirement that is not supported by the ADA or case law." Def. Br., at 29. But CrowdStrike's argument underscores how each decision turned on the vendor defendants' own provision of airline services.

In *Pica v. Delta Air Lines, Inc.*, the court explained the claims were preempted "to the extent *the services offered by* [the vendor] relate to Delta's 'rates, routes, or services.'" No. CV 18-2876-MWF (Ex), 2019 U.S. Dist. LEXIS 65985, at *27 (C.D. Cal. Feb. 14, 2019) (emphasis added). In *In re American Airlines, Inc., Privacy Litigation*, the court similarly found the plaintiffs' claims against the non-airline defendants were "*based on conduct* that relates to American's ticketing service and its reservation component" and therefore preempted. 370 F. Supp. 2d 552, 564–65 (N.D. Tex. 2005) (emphasis added). Both cases illustrate the nature of the airline vendor's conduct is relevant and that preemption applies where the vendor itself engaged in the provision of airline services. CrowdStrike urges the Court to focus on "whether Plaintiffs' particular *claims* relate to airline services" while ignoring that the nature of CrowdStrike's underlying conduct is determinative of that issue. Def. Br., at 26–27 (emphasis in original); *see Smith v. Comair, Inc.*, 134 F.3d 254, 259 (4th Cir. 1998) ("[T]o the extent [plaintiff's] claims are based on conduct

13

distinct from Comair's determination not to grant permission to board, his . . . claims are not preempted.").

CrowdStrike's reliance on *Gordon v. Amadeus IT Group, S.A.*, 194 F. Supp. 3d 236 (S.D.N.Y. 2016), is similarly unavailing. There, the plaintiffs brought antitrust and consumer protection claims against "global distribution systems ('GDS')," companies which distribute fare and service information from airlines to travel agencies and consumers. *Id.* at 240. The court found the plaintiffs' claims were preempted because they would regulate the GDS defendants' marketing of airline prices and services, thus affecting airlines' contractual marketing arrangements and compelling airlines to offer specific services and fares. *Id.* at 244–45.

In contrast, Plaintiffs' claims center on CrowdStrike's software development practices, which are clearly not an airline service. *E.g.*, ROA.356 ¶ 174, 340 ¶ 191, 362-63 ¶¶ 201–02, 365 ¶ 215, 366 ¶ 221. Should Plaintiffs ultimately succeed on any of their claims, "all the central functions of the airline[s] would still survive" unchanged, and so preemption is unwarranted. *Emmett v. Delta Air Lines, Inc.*, No. 2:22-1568, 2024 U.S. Dist. LEXIS 97812, at *33 (W.D. Pa. June 3, 2024); *compare Bower*, 731 F.3d at 96 (common law tort claims preempted because they imposed "heightened and qualitatively different procedures for the booking and boarding of certain passengers").

Significantly, in each case CrowdStrike cites, the vendor defendants' services directly implicated the airline-passenger relationship. *Pica*, 2019 U.S. Dist. LEXIS 65985, at *6 (vendor provided "voice and chat services related to sales and support for Delta"); *In re Am. Airlines*, 370 F. Supp. 2d at 555–56, 564 (vendor maintained a website where customers could purchase tickets); *Gordon*, 194 F. Supp. 3d at 240 (defendants distributed airline service and fare information for consumers). Here, CrowdStrike's software development plays no role in the relationship between passengers and airlines. CrowdStrike does not—indeed, cannot—cite a single case holding claims against an airline's third-party vendor were preempted where the vendor's underlying conduct was not itself related to airline prices, routes, or services. The ADA does not immunize CrowdStrike for the conduct giving rise to this action.

## B. Plaintiffs' Claims Lack Any Forbidden Significant Effect

The District Court erred by holding that Plaintiffs' claims will have a significant effect on airlines because Plaintiffs' claims "do not set prices, mandate or prohibit certain routes, or tell [airlines] what services they may or may not provide, either directly or indirectly." *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 647 (9th Cir. 2014).

The District Court found airlines would experience significant effects "akin to federal regulation" by incentivizing cybersecurity vendors to alter their software

development practices and raise prices specifically for airlines, which could in turn cause unspecified significant effects on airline services and prices. ROA.560. This conclusion is completely undermined by allegations in the Complaint demonstrating CrowdStrike has already changed its software development practices in response to the CrowdStrike Outage. ROA.335 ¶ 105, 336 ¶ 110, 340 ¶ 123, 342 ¶ 128.

Even assuming *arguendo* that these changes could affect airlines' prices or services (which CrowdStrike has not carried its burden of proving), any such effects are solely the result of CrowdStrike's own actions, not Plaintiffs' claims. Potential consequences of CrowdStrike's own actions—which have not come to pass—do not justify preemption here. *Air Transp. Ass'n of Am. v. City & Cnty. of S.F.*, 266 F.3d 1064, 1075 (9th Cir. 2001) (holding costs of complying with challenged city ordinance had no significant effect where defendants voluntarily implemented compliant policies while litigation was pending); *Duncan v. Nw. Airlines, Inc.*, 208 F.3d 1112, 1115 (9th Cir. 2000) (finding airline's "own business decision" to prohibit smoking on flights during pending appeal "demonstrate[d] conclusively" that plaintiff's suit would not have significant effects even if successful).

The District Court also failed to consider allegations that CrowdStrike has "29,000 subscribers globally" and serves "financial service firms, healthcare providers, technology firms, and food and beverage companies," and allegations that the CrowdStrike Outage affected multiple industries, including "healthcare,

banking, media, and emergency services." ROA.327 ¶ 81, 350 ¶ 153. Drawing inferences in Plaintiffs' favor, these allegations demonstrate CrowdStrike's software development practices and Falcon software are uniform across industries and clients, as otherwise the Outage would not have identically impacted multiple industries at the same time. The same allegations make it implausible that CrowdStrike would adopt special processes or prices for airlines, which are only a fraction of its clientele, when it already faces liability for the type of negligence at issue here from clients in other industries—and airlines themselves.[3]

The claims preempted in *Tobin* "plainly concern[ed] the contractual arrangement between FedEx and the users of its services (those who send packages)" and thus the "necessary appurtenances of the contract of carriage." *Tobin*, 775 F.3d at 454. Since the claims arose from the manner in which FedEx conducted its main business of delivering packages they would necessarily "regulate how FedEx operates its core business." *Id.* at 454–56; *accord Rowe*, 552 U.S. at 367 (state law preempted because it "directly regulat[ed] a significant aspect of the motor carrier's package pickup and delivery service").

In contrast, Plaintiffs' claims here neither concern the passenger-airline contractual arrangement nor act upon the manner in which airlines provide

---

[3] *See Delta Air Lines, Inc. v. CrowdStrike, Inc.*, No. 24CV013621, 2025 Ga. Super. LEXIS 864, *3 (Ga. Super. Ct. May 16, 2025) (Delta suit against CrowdStrike relating to the Outage).

transportation. Rather, they concern CrowdStrike's conduct and duties of care owed during the software development process and are thus like those courts find not preempted because they "operate at a level one or more steps away from the moment at which the [airline] offers its customer a service for a particular price." *Watson*, 870 F.3d at 818–19 (quotations omitted) (collecting cases).

CrowdStrike mischaracterizes this litigation as an attempt "to regulate [airlines'] cybersecurity systems," Def. Br., at 40, but cannot explain how the claims here could compel airlines to alter their cybersecurity systems, let alone to alter prices or any aspect of airline services like ticketing, boarding procedures, provision of food and drink, baggage handling, or transportation.[4] *Hodges*, 44 F.3d at 336. Holding CrowdStrike "to the same general obligations of due care . . . that apply to other companies" will not force airlines to "remove, add, or modify" any prices or airline services as defined in *Hodges*. *Day*, 45 F.4th at 1189; *see Bower*, 731 F.3d at 96 ("[S]tandard common law duties of care have little effect on an airlines' day-to-day operations.").

CrowdStrike asserts it is not required to produce empirical evidence of a significant effect, Def. Br., at 41, but it is CrowdStrike's burden to prove the ADA

---

[4] Even assuming *arguendo* that Plaintiffs' claims could force airlines to make significant changes to their internal cybersecurity systems, the claims would not be preempted because cybersecurity is not an airline service in its own right as it is not an element of "the air carrier service bargain" between airlines and passengers. *Hodges*, 44 F.3d at 336.

preempts Plaintiffs' claims. *See Elam v. Kan. City S. Ry.*, 635 F.3d 796, 802 (5th Cir. 2011). CrowdStrike "moved to dismiss under Rule 12(b)(6), and it was required to prove the preemption affirmative defense based on the face of the [Plaintiffs'] complaint." *Lupian v. Joseph Cory Holdings LLC*, 905 F.3d 127, 138 (3d Cir. 2018). Courts consistently refuse to find a forbidden significant effect where a defendant relies on "bare assertion[s]" regarding a purported "parade of horrors" resulting from a law or claim. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1056 (7th Cir. 2016) (no significant effect where defendant "offered no specific evidence of the effect of the [wage law] on its business model, instead preferring to rely on conclusory allegations" of significant effects); *Montalvo*, 508 F.3d at 475 ("The Airlines have not yet produced any evidence on this issue, and we have no factual basis on which to judge the effect of any seating reconfiguration on prices."); *Dilts*, 769 F.3d at 649 ("But Defendants, who bear the burden of proof in establishing the affirmative defense of preemption, submitted no evidence to show that the break laws . . . will so restrict the set of routes available as to indirectly bind Defendants . . . to a limited set of routes.").

The individualized, case-by-case nature of the ADA preemption inquiry dispels any threat of "expansive liability" for airline vendors as the ADA requires courts to "examine the underlying facts of each case to determine whether the particular claims at issue" are preempted. *Travel All Over the World*, 73 F.3d at

1433. Further, this litigation cannot categorically "open the door" to liability for "airline vendors" as a whole because ADA preemption is not based on the identity of the defendant but on the nature of the plaintiff's claims. *See Pica*, 2019 U.S. Dist. LEXIS 65985, at *27; *Gordon*, 194 F. Supp. 3d at 244. CrowdStrike again cites to federal regulations governing airline's conduct in its attempt to expand ADA preemption, but courts "ordinarily do not infer pre-emption from the mere existence of a federal enforcement mechanism." *Watson*, 870 F.3d at 819.

While CrowdStrike argues Plaintiffs' claims will have a forbidden significant effect on airline prices or services, what CrowdStrike is "truly complaining about are free market forces and [its] own competitive decisions." *Air Transp. Ass'n*, 266 F.3d at 1074. Since Plaintiffs' claims have no regulatory-like effect, they are "'too tenuous, remote or peripheral' to be preempted." *Bower*, 731 F.3d at 96 (quoting *Taj Mahal Travel*, 164 F.3d at 194).

### C. The ADA Does Not Preempt Plaintiffs' Personal Injury and Product Liability Claims

#### 1. Plaintiffs' Personal Injury Claims Are Not Preempted Under The ADA

Sensing that the nature of Plaintiffs' claims does not fit into its procrustean narrative that the Complaint relates to airline rates, routes, or services, CrowdStrike attempts to deflect and rationalize years of accepted jurisprudence explaining that claims sounding in tort are not subject to preemption. Def. Br., at 45–52.

As this Court explained in *Hodges*, "[s]ignificantly . . . neither the ADA nor its legislative history indicates that Congress intended to displace the application of state tort law to personal physical injury inflicted by aircraft operations, or that Congress even considered such preemption." *Hodges*, 44 F.3d at 338. This Court explained, "[i]n [§ 41713] Congress intended to prevent the states from regressing on economic deregulation by applying their own laws or rules concerning 'services,' but in [§ 41112], Congress explicitly preserved airlines' duty to respond to tort actions . . . for physical injury or property damage." *Id.* at 339. The insurance coverage mandate "can only be understood to qualify the scope of 'services' removed from state regulation" because reading the ADA to preempt all personal injury claims "would have rendered any requirement of insurance coverage nugatory." *Id.* at 338; *accord Taj Mahal Travel*, 164 F.3d at 194 (insurance mandate "is strong evidence that Congress did not intend to preempt state tort claims" or "to deprive passengers of their common law rights"); *Branche v. Airtran Airways, Inc.*, 342 F.3d 1248, 1258–59 (11th Cir. 2003) ("state law personal injury actions generally have been held not to be pre-empted under the ADA").

CrowdStrike attempts to blunt the impact of *Hodges* by claiming that it was based merely on a "limited exception" related to insurance coverage. Def. Br., at 47. This Court's recognition that "no strict dichotomy exists" between aircraft operations and airline services evidences a broader approach. *See Hodges*, 44 F.3d

at 339. As the Court made clear, "Congress did not . . . intend . . . to preempt all state claims for personal injury" and the plaintiff's negligence did "not relate to" the airline defendant's "services." *Id.* at 338, 340.

In *Charas*, the Ninth Circuit reviewed similar tort claims and held "that in enacting the ADA, Congress intended to preempt only state laws and lawsuits that would adversely affect the economic deregulation of the airlines and the forces of competition within the airline industry. Congress did not intend to preempt passengers' run-of-the-mill personal injury claims." *Charas*, 160 F.3d at 1261. Importantly, the Ninth Circuit cautioned that the "operations-versus-service dichotomy invites nonsensical, inequitable, and inconsistent results, and in any event has nothing to do with the purpose of airline deregulation." *Id.* at 1263 & n.3 (quoting *Hodges*, 44 F.3d at 342 (Holly, J., concurring)). Instead, courts should "examine whether the state laws underlying the claims frustrate the goal of economic deregulation by interfering with the forces of competition." *Id.*; *see Day*, 45 F.4th at 1187–88 (agreeing with *Charas* that "nothing in the ADA or its legislative history supports the view that Congress also intended to immunize airlines from liability for any violations of generally applicable negligence") (collecting cases).

CrowdStrike seeks to undermine *Charas* by claiming that decision is "limited to interpreting the word 'service'" and does not bear on the ADA's application to personal injury claims. Def. Br., at 49. Even a cursory reading of *Charas* reveals in-

depth discussion of the ADA's applicability to personal injury tort claims. *See Charas*, 160 F.3d at 1261. That *Charas*'s definition of service is the minority approach is irrelevant here because Plaintiffs do not cite *Charas* for its definition of service, but rather as further evidence that ADA preemption is principally concerned with economic regulation, not personal injury claims. Pls. Br., at 24–25. Even courts that have rejected *Charas*'s definition of services agree with the Ninth Circuit on this issue. *See Bower*, 731 F.3d at 93 (favorably citing *Charas* and other cases as agreeing Congress "intended certain tort claims to survive preemption").

### 2.   Plaintiffs' Product Liability Claims Are Not Preempted Under The ADA

CrowdStrike's argument that Plaintiffs did not raise product liability below is flawed. In their opposition to CrowdStrike's motion to dismiss, Plaintiffs argued that "CrowdStrike could have avoided this disaster by conducting basic testing." ROA.467. They also argued "CrowdStrike's misconduct in poorly designing, managing, and failing to test its software services and pushing its defective updates out to other computer systems occurred in Texas." ROA.480; *see also* ROA.470 ("Had CrowdStrike performed basic due diligence to confirm that the update was not defective . . . the CrowdStrike Outage would not have occurred"), 468 (Outage "was completely preventable had CrowdStrike followed industry-standard processes and basic testing procedures"). These allegations encompass Plaintiffs' claims for

negligent design, negligent failure to test, and negligent failure to warn and were properly raised in the District Court.

CrowdStrike's argument that cases Plaintiffs cite from the Tenth and Eleventh Circuit are of little utility cannot be taken seriously. The Tenth Circuit, reviewing whether an airplane was negligently designed, held that the claims did not fall within the ADA's preemptive reach. *See Cleveland v. Piper Aircraft Corp.*, 985 F.2d 1438, 1444 n.13, 1447 (10th Cir. 1993) ("Congress has intended to allow state common law to stand side by side with the system of federal regulations it has developed."). The Eleventh Circuit, reviewing whether an airplane seat was negligently designed, held that the claims were not subject to preemption because they do not relate to airline routes, rates, or services. *Pub. Health Tr. v. Lake Aircraft, Inc.*, 992 F.2d 291, 295 (11th Cir. 1993) ("Because Dee's design defect claims lie outside the pre-emptive reach of [the ADA], we conclude that those claims are not pre-empted."). Dicta extracted by CrowdStrike concerning whether implied or express preemption exists does not alter the holdings and lessons in each case. *Cleveland*, 985 F.2d at 1445 ("We find that is not impossible to meet both state common law standards and the federal regulations."); *Pub. Health*, 992 F.2d at 295 ("Congress did not intend to pre-empt state laws on matters unrelated to airline rates, routes or services.").

CrowdStrike's suggestion that *Cleveland* and *Public Health* have "been called into question" by subsequent Supreme Court decisions ignores that the only aspect

of *Cleveland* to be questioned regards implied preemption and has no bearing here.

Def. Br., at 52; *see US Airways, Inc. v. O'Donnell*, 627 F.3d 1318, 1326 (10th Cir.

2010) (noting "the Supreme Court appears to have rejected" the premise that

"implied preemption is generally inapplicable to a federal statute that contains an

express preemption provision"). Later decisions by Circuit Courts of Appeal have

reached similar conclusions without relying on the questioned implied preemption

reasoning. *See Sikkelee v. Precision Airmotive Corp.*, 822 F.3d 680, 692–93, 696 (3d

Cir. 2016); *Martin v. Midwest Express Holdings, Inc.*, 555 F.3d 806, 811 (9th Cir.

2009).

Like the product liability claims alleged in *Cleveland* and *Public Health*,

Plaintiffs' product liability claims are not preempted.

## III.   The District Court's Reliance on Facts Not Before the Court Was Reversible Error

CrowdStrike argues the District Court properly considered whether Plaintiffs'

claims would be preempted if brought against an unspecified, hypothetical airline to

reach its holding, yet acknowledges "[t]he only question is whether Plaintiffs' claims

relate to airline services." Def. Br., at 29. Both cannot be true.

Contrary to CrowdStrike's mischaracterization of their argument, Plaintiffs

do not argue it is "improper" for a court to "illustrat[e] a component of" its analysis

with a hypothetical; that is simply not what the District Court did below. Def. Br., at

34. The District Court "conclude[d] that Plaintiffs' claims concern the services they

received from their respective airlines" because, in its view, "their suit would be preempted if brought against the airlines directly." ROA.557; Pls. Br., at 39. Thus, the District Court did not merely use this hypothetical scenario to explore a concept—it held that hypothetical scenario justified its ultimate conclusion in the case before it. ROA.556-57. This is reversible error. *See Rice v. Norman Williams Co.*, 458 U.S. 654, 659 (1982) ("The existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute."); *Torres v. Precision Indus.*, 938 F.3d 752, 754 (6th Cir. 2019) ("Federal courts are not in the business of answering hypothetical questions.").

CrowdStrike does not seriously contest that the ADA preemption analysis is necessarily based on the facts actually before the court, and fails to address the numerous cases illustrating this point. *E.g.*, *Travel All Over the World*, 73 F.3d at 1433 ("[W]e must examine the underlying facts of each case to determine whether the particular claims at issue 'relate to' airline rates, routes or services."); *Smith*, 134 F.3d at 259 ("[W]e must look at the facts underlying the specific claim."); *Tobin*, 775 F.3d at 456. Courts in this Circuit agree. *E.g.*, *Lewis v. Cont'l Airlines, Inc.*, 40 F. Supp. 2d 406, 411 (S.D. Tex. 1999); *Conservation Force v. Delta Air Lines, Inc.*, 190 F. Supp. 3d 606, 612 (N.D. Tex. 2016).

CrowdStrike is the only defendant here. Whether different claims brought against an airline would be preempted does not bear on whether the claims brought

against a software company here are preempted.[5] The District Court failed to properly apply the correct legal standard by premising its holding on the outcome of different claims against a nonparty. *See Pica*, 2019 U.S. Dist. LEXIS 65985, at *27; *Gordon*, 194 F. Supp. 3d at 244. This error warrants reversal. *See Garrett v. Lumpkin*, 96 F.4th 896, 900 (5th Cir. 2024) ("Where the district court's application of the wrong legal standard may have influenced its ultimate conclusion, remand is proper.").

## CONCLUSION

For the foregoing reasons and those in their principal Brief, Plaintiffs-Appellants respectfully request that the Court reverse the order of the United States District Court for the Western District of Texas granting Defendants-Appellees' motion to dismiss, vacate the judgment in favor of Defendants-Appellees, and remand this action for further proceedings.

Date: December 12, 2025                          Respectfully submitted,

                                                 /s/ Ben Barnow
                                                 Ben Barnow
                                                 BARNOW AND ASSOCIATES, P.C.
                                                 205 West Randolph Street, Ste. 1630
                                                 Chicago, IL 60606
                                                 Tel: 312-621-2000

---

[5] Because Plaintiffs' claims all directly concern software development practices, they could not allege the same claims against the airlines, who played no role in the development of the Falcon platform or defective update. CrowdStrike's discussion regarding a hypothetical "in house" software program is neither based on the record nor supported by caselaw. Def. Br., at 34 n.6.

Fax: 312-641-5504
b.barnow@barnowlaw.com

Robert K. Shelquist
CUNEO GILBERT & LaDUCA, LLP
5775 Wayzata Blvd., Suite 620
St. Louis Park, MN 55416
Tel: 612.254.7288
rshelquist@cuneolaw.com

Cory S. Fein
CORY FEIN LAW FIRM
13105 Northwest Fwy., Suite 705
Houston, TX 77040
Tel.: 713-730-5001
Fax: 530-748-0601
cory@coryfeinlaw.com

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I, Ben Barnow, hereby certify that the foregoing document was caused to be served on counsel for Defendants-Appellees through the Court's electronic filing system this 12th day of December, 2025.

/s/ Ben Barnow
Ben Barnow

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

I, Ben Barnow, hereby certify that the foregoing document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,443 words. I also certify that the foregoing document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in size 14, Times New Roman font.

/s/ Ben Barnow
Ben Barnow

*Counsel for Plaintiffs-Appellants*

Dated: December 12, 2025